33  145
96  606

## POOL'S HEIRS vs. POOL'S EXECUTOR.

[CONTEST AS TO VALIDITY OF WILL.]

1. *Cross examination of witness.*—A witness may be asked, on cross examination, " if he was not then under the influence of ardent spirits."

2. *Relevancy of evidence affecting question of undue influence.*—Where one of the issues is, whether the will propounded for probate was procured by undue influence ; and evidence has been adduced tending to show that one of the slaves whom the testator directed to be carried to a non-slaveholding State and there emancipated, making her one of his legatees, had influence over him, and a motive to exercise it in procuring such a will,—it is competent for the proponent to prove who was the reputed father of said slave, and that her reputed father had given the testator, on his removal to this State, fifteen or twenty likely negroes.

3. *What constitutes undue influence.*—A legal presumption of undue influence does not arise from the facts, that the testator was a man of weak mind, and addicted to drinking ; that he was " nigh unto death " when the will was executed ; that he was surrounded by the persons who were principally benefited by the will, while none of his own relations were about him, and that the provisions of the will were unnatural ; although the jury may not be prohibited from inferring undue influence from those circumstances.

APPEAL from the Probate Court of Dallas.

IN the matter of the last will and testament of Ephraim Pool, deceased, which was propounded for probate by George L. Stewart, the executor therein named. The record does not show by whom the probate was contested, nor what the grounds of contest were. The bill of exceptions is so confused, (and many portions of it illegible,) that it is impossible to state the substance of the evidence adduced on the trial. The material portions

relating to the points here decided may be briefly stated as follows:

Dr. Tanner, who was one of the testator's attending physicians at the time of his death, was examined as a witness by the proponent, "and testified in a clear, distinct and intelligent manner." "On cross examination, the defendants' counsel asked him, if he was not then under the influence of ardent spirits. The witness replied, that the counsel had no right to ask that question, and appealed to the court; and the court decided that the question was improper and illegal; to which ruling of the court the defendants excepted."

The testator's will directed his executor to carry certain slaves (to-wit, Harriet, a mulatto woman, and several children of another woman, who were principally raised by her, and. whose father the testator appears to have been) to Ohio, for the purpose of emancipation, and to invest in a bank for their benefit the entire proceeds arising from the sale of all his property. "It was admitted that one Canty, an absent witness, would swear that he knew said Pool and the woman Harriet, and would state circumstances showing that Harriet had influence over Pool; one of which circumstances was, that Pool became jealous of a negro man who was running after one of his women, and carried his gun about with him, and declared his intention to shoot him; that Canty went to Harriet, and requested her to get Pool to abandon the idea; and that he heard nothing more about the matter. *The plaintiff objected to the competency of this evidence; but the court allowed the circumstances named to be given in evidence, and excluded the circumstances named; to which ruling and decision the defendants excepted."* R. K. Harrison testified, among other things, "that he had known Pool intimately for about sixteen years; that he brought the woman Harriet with him to Alabama; that Harriet was the reputed daughter of Richard B. Harrison, deceased, who gave Pool, after his removal to Alabama, fifteen or twenty likely negroes; that Pool had them eight or ten years, working them, and, after Harrison's death, delivered them to his administrator. The defendants objected

Pool's Heirs v. Pool's Executor.

to the question as to who was the reputed father of Harriet, and also to the statement that R. B. Harrison had given Pool fifteen or twenty negroes; but the court overruled the objection, and the defendants excepted."

The contestants asked the court to instruct the jury,—

"1. That if they believed from the evidence that Pool was a man of weak mind, and had been addicted to drinking, and occasionally to excess; and that he was nigh unto death at the time he signed the will; and that the will is unnatural in its provisions; and that he was surrounded by the persons who are principally benefited by the will, and none of his own relatives were about him,— that then the law presumes that the will was procured by undue influence and ——, and it devolves upon the plaintiff to show that no undue influence was exerted.

"2. That if they believed from the evidence that the will is unnatural, and that the testator was nigh unto death, the law presumes undue influence on the part of the persons benefited by the will, if they had an opportunity to exercise such influence, and it devolves on the plaintiff to show clearly that no such influence was exerted over the testator."

The court refused each of these charges, and the contestants excepted; and they now assign as error all the rulings of the court to which they reserved exceptions.

BYRD & MORGAN, for the appellants.
GEO. W. GAYLE, *contra*.

RICE, C. J.—However "clear, distinct and intelligent" may have been the manner in which Dr. Tanner testified, he was the witness of the plaintiff, and his testimony on his direct examination was material; and beyond doubt, it was the right of the defendants, *on cross examination*, to ask him if he was not then "under the influence of ardent spirits." "His powers of discernment, memory, and description," were proper matters for the consideration of the jury, whose duty it was to determine the just weight and value of his testimony; and if he was under the influence of ardent spirits at the time he was

testifying, it was proper that the jury should know it. There appears to us no sound reason for denying to the defendants, *on cross examination*, the right to put the question to him.—1 Greenleaf on Evidence, §§ 446, 448, 449; Campbell v. The State, 23 Ala. R. 44; Williamson v. Stoudenmire, 29 Ala. R. 558; McHugh v. The State, at last term; Young v. Smith, 25 Missouri R. 341.

[2.] It seems that one of the questions in this case was, whether the will was obtained by undue influence. In the determination of such a question, great latitude is of necessity given to the evidence.—Gilbert v. Gilbert, 22 Ala. R. 529. After some evidence had been adduced, tending to show that Harriet had influence over the testator, and a motive to exercise it to procure such a will as that here propounded for probate, we cannot say that it was erroneous to admit the evidence, that "Harriet was the reputed daughter of Richard B. Harrison; and, after Pool's removal to Alabama, Harrison gave Pool 15 or 20 likely negroes." That evidence may be exceedingly weak, and may, perhaps, be entirely deprived of effect, by the evidence that, after the death of Harrison, Pool delivered back the negroes to Harrison's administrator; but, however that may be, the evidence was rightly allowed to go to the jury for what it is worth.

[3.] We think the propositions asserted in the charges asked, were rather too strong. *The law* does not presume undue influence from the facts supposed in those charges, although it may not prohibit the jury from inferring it from such facts. The question of undue influence in obtaining a will is one eminently fit for the determination of a jury; and if we were to sustain the charges as asked in this case, we should thereby interfere too much with that freedom of investigation which the law wisely allows to the jury in all such cases as the present.

As the question in relation to Canty's testimony will probably not be presented in the same shape on another trial, we decline to decide it.

The question raised in this court, as to the validity of *some* of the legacies, does not appear to have been raised in the court below, either by the pleadings or charges.

We therefore decline to consider it, especially as it is not even contended, that every provision in the will is void, and that no part of it can in any event be admitted to probate.—See Florey v. Florey, 24 Ala. R. 241; Ingraham v. Thrasher, 32 Ala. Rep. 645; Hooper v. Hooper, 32 Ala. R. 669.

For the error of the court below on the first point considered in this opinion, the judgment is reversed, and the cause remanded.