# Bancroft *v.* Otis.

## *Contest as to Probate of Will.*

| 91 | 279 |
|---|---|
| 98 | 299 |
| 91 | 279 |
| 94 | 105 |
| 94 | 533 |
| 91 | 279 |
| 95 | 495 |
| 95 | 503 |
| 91 | 279 |
| 96 | 603 |
| 91 | 279 |
| 98 | 271 |
| 98 | 618 |
| 91 | 279 |
| 100 | 47 |
| 100 | 169 |
| 101 | 233 |
| 91 | 279 |
| 105 | 71 |
| 91 | 279 |
| 106 | 95 |
| 106 | 317 |
| 91 | 279 |
| 114 | 227 |
| 91 | 279 |
| 119 | 658 |
| 119 | 666 |
| 91 | 279 |
| 131 | 611 |
| 91 | 279 |
| 135 | 305 |
| 91 | 279 |
| e142 | 588 |

1. *Confidential relations between testator and principal beneficiary under will; burden of proof.*—The mere existence of confidential relations between the testator and the principal beneficiary under his will, who is also the proponent, does not raise the presumption that the will was procured by the exercise of undue influence, nor impose on the proponent the *onus* of disproving undue influence, fraud, or coercion; there must be, in addition to that fact, evidence of his active interference in procuring the execution of the will, before that presumption arises. (*Moore v. Spier*, 80 Ala. 129, overruled.)

2. *Argumentative charges.*—as, that the jury "may look to" this fact, or "may consider" that fact, or that a third fact "is pertinent to the inquiry" before them—may properly be refused, since the court is not bound thus to emphasize or give additional force to the argument of counsel; but giving such a charge is not a reversible error.

3. *Misleading charges.*—A charge given which tends to mislead the jury, but which can be met and remedied by a request for additional or explanatory instructions, is not a reversible error.

4. *Abstract charges*, when given, do not constitute reversible error, unless the appellate court can see that the effect was to mislead the jury to the appellant's injury.

APPEAL from the Probate Court of Mobile.

Tried before the Hon. PRICE WILLIAMS.

In the matter of the probate of a paper purporting to be the last will and testament of William Otis, deceased, which was propounded for probate by Charles M. Bancroft, who was therein named as executor, and was contested by William Otis and others, heirs at law and next of kin of the decedent. Said William Otis, the testator, died on the 23d August, 1889, possessed of an estate worth $100,000, or more; and he left neither wife, children, nor the descendants of children. The contestants of the will were a surviving sister, and the children of deceased brothers and sisters, to each of whom a legacy of $250 dollars was given; and several other small legacies were given. Charles M. Bancroft, the proponent, was a step-son of the testator, and for many years had been his partner in business; and he was made residuary legatee and devisee, and nominated as executor without bond. The will was dated and executed on the 5th April, 1888, was attested by two subscribing witnesses, and was found in the testator's iron safe after his death.

The probate of the paper was contested on these grounds: (1) "because said last will and testament was not duly

executed as required by law; (2) "because said William Otis was, at the time of making said last will and testament, of unsound mind, and incompetent to make said last will and testament;" (3) "because the execution of said last will and testament was obtained by undue influence;" (4) "because the excution of said last will and testament was obtained by misrepresentation of facts, and by fraud." Issue was joined on each of these grounds. On the evidence adduced on the trial, the court gave the following charges to the jury, on request of the contestants, the proponent duly excepting to each:

(1.) "If the jury believe from the evidence that Mr. Bancroft occupied a confidential relation to Mr. Otis, though he was the step-son of Mr. Otis, the burden of proof is on him to show by the weight of evidence that the alleged will was not produced [procured?] by fraud or undue influence; and if the jury shall not be satisfied in their own minds, from the evidence, that no fraud or undue influence was exerted by Mr. Bancroft, directly or through the instrumentality of others, upon Mr. Otis, in the procurement of the making of the alleged will, the jury must find that the will.is not valid, and render their verdict for the contestants."

(2.) "If the jury shall believe from the evidence that a confidential relation existed between Mr. Bancroft and Mr. Otis, the burden is cast on Mr. Bancroft to show, by a preponderance of proof, that the alleged will was not superinduced by fraud or undue influence, but was the result of a free volition of Mr. Otis. This rule of law is one of public policy, designed to prevent the abuse of certain confidential relationships, and to preserve them free from the taint of an over-reaching selfishness."

(3.) "Whether a will is natural, is a legitimate inquiry, when its validity is contested on the ground of undue influence; and, as affecting that question, the pecuniary circumstances of the nephews and nieces of the late Wm. Otis, are pertinent evidence, and proper for the jury to consider in making up their verdict as to the validity of the will."

(3a.) "It is permissible to inquire whether the provisions of the will, as shown by the evidence, are just, and reasonable, and consonant with the state of the family relations of the late Mr. Otis; and, as bearing on this question, the jury may look at the proof of the value of his estate, and of the pecuniary condition of his nephews and nieces."

(4.) "In determining whether there has been any undue influence used by Mr. Bancroft upon Mr. Otis, the jury will consider the physical and mental condition of Mr. Otis, and the relative position and confidential relations between the said par-

[Bancroft v. Otis.]

ties, and the motive of said Bancroft, as deducible from self-interest or affection, and also the natural or unnatural disposition of the property, as shown by the evidence."

(5.) "The opinion of a witness, as to the sanity of a person, depends for its weight on the capacity of the witness to judge, and his opportunity. Physicians are considered as occupying a high grade on such questions, both because they are men of cultivated minds and observation, and because, from their education and pursuits, they are supposed to have turned their attention more particularly to such subjects, and, therefore, to be able to discriminate more accurately, especially a physician that has attended the patient through the disease which is supposed to have disabled his mind."

(6.) "If Mr. Otis' mind and memory was unsound, and he did not understand what he was doing when he signed the will, then the will is void, and the jury should find for the contestants."

(7.) " In the 'disposing memory' requisite in a testator to make a valid will, is the power to collect and retain the elements of the business to be performed, for a sufficient time to perceive their obvious relations to each other. He must know what he is doing."

(8.) "To have been competent to make a valid will, Mr. Otis, at the time of executing the alleged will, must not only have had mind and memory, but must have understood the business in which he was engaged. A total deprivation of reason is not necessary to destroy testamentary capacity."

(9.) "Mental incapacity is always sufficient to defeat a will, the direct offspring and fruit of such incapacity; and it is immaterial that the testator, if he had been of sound mind, would have made the same will; for a will which is the direct offspring of such incapacity, can not be upheld, merely if the jury believe the testator, if he had been sane, would have made the same will."

(10.) "If the jury believe from the evidence that Mr. Otis was of infirm mind, and that Mr. Bancroft used undue influence with him, and thereby induced him to make the alleged will, although it may have been written by another party, and never seen by Bancroft; the said alleged will is void, and the jury should find for the contestants."

(11.) "If the jury believe from the evidence that the deceased, at the time of the execution of the alleged will, was an aged man, and had a weak mind and memory, although he might not be legally incompetent to make a will; yet the will of such a person ought not to be sustained, unless it appeared that such disposition of property had been fairly made, and

emanated from a free will, without the interposition of others."

(12.) The existence of confidential relations, when shown to exist, between the testator and the legatee or devisee, excites the suspicion and jealousy of courts, and cast on the proponent of a will the duty of showing by affirmative evidence the testator's volition and free agency in making the alleged will."

(13.) "If confidential relations are shown by the evidence to have existed between Mr. Otis and the proponent, Mr. Bancroft, at the time of, and prior to making the alleged will, then the burden is on Bancroft to reasonably satisfy the jury that the alleged will was not produced [procured?] by the exercise of undue influence over the mind of Mr. Otis; and if the evidence has not reasonably satisfied the jury of this, they ought to find against the validity of the will, and for the contestants."

The jury returned a verdict in these words: "We, the jury, find the *within* not to be the genuine last will of the late William Otis, deceased." The proponent made a motion to set aside this verdict, and for a new trial, on the grounds, (1) that the verdict was contrary to the evidence, (2) that it was contrary to the law and the evidence, and (3) that the court erred in the charges given. The court overruled this motion, and rendered judgment rejecting the probate of the paper as a will; and the proponent duly excepted.

The several charges given and excepted to, the overruling of the motion to set aside the verdict, and the judgment rendered on it, are now assigned as error.

L. H. FAITH, and with him, HAMILTONS & GAILLARD, for the appellant, argued all the assignments of error, but relied principally on the following points and authorities: (1.) The existence of a confidential relation between the testator and the principal beneficiary under his will, without more, does not raise the presumption of fraud or undue influence in procuring it. The case of *Moore v. Spier*, 80 Ala. 129, asserting the contrary doctrine, is opposed to the great weight of authority, is not supported by the cases cited, and loses sight of the distinction between wills and deeds, as recognized by *Shipman v. Furniss*, 69 Ala. 564.—*Daniel v. Hill*, 52 Ala. 442; *Leverett's Heirs v. Carlisle*, 19 Ala. 80; *Taylor v. Kelly*, 31 Ala. 70; *Pool v. Pool*, 35 Ala. 12; *Adams v. Thornton & Wellborn*, 78 Ala. 489; *Wheeler v. Whipple*, 14 Atl. Rep. 277; 44 N. J. Eq. 141; *Post v. Mason*, 91 N. Y. 539; 1 Jarman Wills, 142; 99 Mass. 79; 123 Mass. 590. (2.) Charges 2, 3, 3*a*, and 4, each

[Bancroft v. Otis.]

selects certain portions of the evidence, and calls the particular attention of the jury to them. They are argumentative, misleading and erroneous.—*Snider v. Burks,* 84 Ala, 53 ; *Hussey v. State,* 86 Ala. 34 ; *Jordan v. State,* 81 Ala. 20. (3.) Whether a will is a just and reasonable disposition of the testator's property, is not a question to be submitted to the jury by instructions.—*Carpenter v. Calvert,* 83 Ill. 62, 70 ; *Pierce v. Pierce,* 38 Mich. 420 ; *Spratt v. Spratt,* 43 N. W. Rep. 627 ; *Coleman v. Robinson,* 17 Ala. 84. (4.) The 5th charge invades the province of the jury, in saying that the testimony of a physician is of a higher grade than that of other witnesses. *Gunter v. State,* 83 Ala. 96 ; *Davenport v. State,* 85 Ala. 336 ; *Stix v. Keith,* 85 Ala. 465 ; 83 Ill. 62. (5.) The court ought to have set aside the verdict, and admitted the will to probate *non obstante veredicto.*—*Traun v. Wittick,* 27 Ala. 571 ; *Ex parte Henry,* 24 Ala. 647 ; *Chambers v. Walker,* 42 Ala. 446 ; *Clay v. State,* 43 Ala. 353 ; 59 Cal. 97 ; 24 Wend. 291 ; 45 Maine, 571 ; 2 Wheat. 221 ; 3 Cranch, 270 ; 23 Pick. 402 ; 4 Md. 397. (6.) On a reversal, this court should render the judgment the court below ought to have rendered.—*Leeper v. Taylor,* 47 Ala. 221 ; 23 N. Y. 9 ; 4 Metc. Ky., 163 ; 37 Penn. St. 323 ; 45 Barb. 86 ; 48 Ill. 466 ; 31 Iowa, 477 ; 23 Wis. 374 ; 12 S. W. Rep. 762.

GREG. L. & H. T. SMITH, and GAYLORD B. & FRANK B. CLARK, *contra.*—(1.) As to the effect of confidential relations existing between the testator and the principal beneficiary under his will, the charges of the court assert a correct proposition. *Moore v. Spier,* 80 Ala. 134, and cases there cited ; *Lyons v. Campbell,* 88 Ala. 462 ; *Daniel v. Hill,* 52 Ala. 443 ; Schouler on Wills, § 246. (2.) When a will is contested on the ground of fraud and undue influence, it is admissible to inquire whether its provisions are just and reasonable.—*Fountain v. Brown,* 38 Ala. 74 ; *Gilbert v. Gilbert,* 22 Ala. 533 ; *Stubbs v. Houston,* 33 Ala. 563 ; Schouler on Wills, § 77. (3) The opinions of physicians, on questions of sanity and mental capacity, are entitled to greater weight than other persons.—*Burton v. Scott,* 3 Rand. Va. 399 ; 32 Amer. Rep. 656 ; 3 Wash. C. C. 587 ; 21 Mich. 123. (4.) The verdict was responsive to the issue.

McCLELLAN, J.—The present appeal brings under review, *inter alia,* certain instructions, thirteen in number, given by the judge below to the jury at the request in writing of the contestants. Of these, the first, second, twelfth and thirteenth state substantially one and the same proposition, and will be considered together. That proposition is, in short, that if, upon

[Bancroft v. Otis.]

the contest of a will, it be shown that confidential relations existed between the proponent, he being also the principal beneficiary, and the testator, the law, without more, indulges the *prima facie* presumption, that the testament was procured to be executed by him through the exercise of undue influence over the mind of the testator, and puts upon him the *onus* of rebutting this presumption, by affirmative evidence that the testamentary act was not induced or procured by coercion or fraud on his part.

For giving these instructions, the trial judge had the very highest authority that could have obtained in the premises,— an adjudication of the Supreme Court of Alabama. The point was fairly presented, and directly ruled, in the case of *Moore v. Spier*, 80 Ala. 129,—an opinion concurred in by the whole court. It appeared in that case that confidential relations, much of the character of those shown here between Bancroft and William Otis, deceased, existed between the proponent and principal devisee, one Spier, and the testatrix. "He was her trusted agent, having the general management of her property and business." He was related to her. He had by kindness acquired great influence over her. It did not appear that this influence was illegitimate, or that it had been unduly, or at all in fact, exercised in securing the large testamentory provision which she made for him. Yet the court said: "Under the rule laid down by this court in *Shipman v. Furniss*, 69 Ala. 555, and *Waddell v. Lanier*, 62 Ala. 347, the burden of proof, in our opinion, was cast on the devisee, to show that the will in question was not superinduced by fraud or undue influence, but was the result of free volition on the part of the testatrix. We need not add anything more here by way of discussion to what is said in these cases, except that this rule as to the burden of proof is one of public policy, designed to prevent the abuse of certain confidential relationships, and to preserve them free from the taint of an overreaching selfishness." And following this case, it was said, in *Lyons v. Campbell*, 88 Ala. 469, that "whenever a confidential relation exists, such as principal and agent, during the life-time of the deceased, continuing to his death, and the agent is a favored legatee under the will, the presumption or inference is that, by improper acts or circumventions—by the exercise of some undue influence—the testator was induced to bestow the gift or legacy contrary to his desire and free-will; and the burden of proof is cast on the legatee to show that the will was the result of his own volition, and not procured by fraud or undue influence." And somewhat similar language is employed in the case of *Daniel v. Hill*, 52 Ala. 437, though, when read in

the connection in which it there occurs, it can probably not be said to sustain the proposition of the charges we are considering, as *dicta* even. It is at once apparent, therefore, that to the imputation of error to the lower court in the instructions referred to, it is essential that one, at least, of the former decisions of this court must be overruled, another limited, and yet another explained. Before reaching such a conclusion, we ought, of course, to be very sure of our footing, not only on authority, but especially on reason and principle; for, if the position taken by this court can find justification and support in logical deduction from recognized legal truths, it should, I apprehend, be sustained, notwithstanding a conservative respect for the adjudged cases of other jurisdictions, and the opinions of text-writers, might incline us to another result, if the question were a new one in this court.

Recurring, then, to *Moore v. Spier*, it is to be noted, that the doctrine there announced is made to rest on the cases of *Shipman v. Furniss*, and *Waddell v. Lanier*. An examination of those cases discloses that each of them involves a contract, and not a will—a transaction between living persons, by which, while both are *in esse*, one claims some advantage of the other—and not a transaction out of which property is received by one as a gift on the death of the other. Those cases are authority for the doctrine of *Moore v. Spier*, therefore, only on the assumption, that the same rule in this respect applies to devises, bequests and wills, as obtains in regard to gifts, conveyances and contracts *inter vivos*. The same may be said of that part of the opinion in *Lyons v. Campbell* which is quoted above, so far as it is rested on *Shipman v. Furniss*, and *Waddell v. Lanier*. And, moreover, it is to be noted that, in *Lyons v. Campbell*, the decision turned, not upon the existence of confidential relations alone, but in connection with the further facts, that the proponent was not only active in procuring the will to be written, but gave the directions as to its contents to his own son, who wrote it, and induced its execution by fraudulent misrepresentations as to the value of the residuary estate which was bequeathed and devised to him, so that the language quoted from that case was essentially a mere *dictum*, and gives no additional force to the opinion in *Moore v. Spier*. Similarly, what is said in *Daniel v. Hill*, apparently in line with *Moore v. Spier*, is not so when reference is had to the facts of the case, and when that part of the opinion relied on is read in connection with that which precedes and follows it. There is no other case in Alabama which, either in the terms of the opinion, or in the matter decided, can be construed or contorted into support of the proposition, that con-

fidential relations alone infect a will with the taint of *prima facie* invalidity, and shift the burden of proving that it is the result of the testator's free agency on the proponent. In other jurisdictions we find but two adjudged cases which in any degree support that doctrine. One of these is *St. Leger's Appeal*, 34 Conn. 434, 450, which contains a *dictum* to the effect, that "The law presumes undue influence from confidential relations between the testator and principal legatees or devisees, and that the burden is upon them to show by satisfactory proof that such presumed influence did not in fact, or in any degree, induce" the making of the will in their favor. The other is the case of *Meek v. Perry*, 36 Miss. 190, in which it was held by a divided court, "That the principles of law which protect the interests of wards, in transactions with their guardians, extend to wills made by them in favor of their guardian; and hence a testament made by a ward in favor of his guardian will be held void for want of capacity in the ward, unless the legal presumption is rebutted by proof."

On the other hand, the authorities to the converse of the proposition declared in *Moore v. Spier* as to wills, and embodied in the charges under consideration, are almost too numerous to be cited. The position taken by them is, that the reasons of the rule which impute undue influence to confidential relations in respect of contracts and transactions *inter vivos*, do not apply to wills, and that before testamentary disposition can be presumed to have been unduly influenced, something in addition to the mere existence of confidential relations must be shown; as, that the proponent initiated the preparation of the instrument, or wrote it himself, or gave directions as to its contents to the draughtsman, or selected the witnesses to be present at its execution, and the like; or, in short, that the beneficiary, whose interest under the paper is attacked, was as a matter of fact—aside from mere presumption of law—active in respect to, or in some way connected with, the preparation and execution of the alleged will. According to this line of authority, confidential relations, coupled with some act done in the premises, raise the presumption of undue influence against the proponent, in a case like the present one, but no manner or degree of confidential relationship, of and by itself, will suffice to thus cast the burden of proving that the testamentary act was not unduly influenced upon him.—Schouler on Wills, § 246; 1 Jarman on Wills, 35, 36, and notes; 1 Redf. on Wills, 537; *Gardiner v. Gardiner*, 34 N. Y. 155, 163; *Tyler v. Gardiner*, 35 *Ib.* 559; *Post v. Mason*, 91 *Ib.* 539; *Cudney v. Cudney*, 95 *Ib.* 148; *Hagan v. Yates*, 1 Demorest, 584; *Elliott's Will*, 2 J. J. Marsh. 341;

*Bleecker v. Lynch,* 1 Bradf. 458 ; *Tyson v. Tyson,* 37 Md. 567 ; *Rutherford v. Morris,* 77 Ill. 397 ; *Subrest v. Edwards,* 4 Met. (Ky.) 163, 174 ; *Baldwin v. Parker,* 99 Mass. 79, 85 ; *McKeon v. Barnes,* 108 Mass. 344 ; *Waddington v. Buzby,* 10 Atl. Rep. 862 ; *Dale's Appeal,* 17 Atl. Rep. 757 ; *Wheeler v. Whipple,* 44 N. J. Eq. 141, 145 ; s. c., 14 Atl. Rep. 275 ; *Boyse v. Rossborough,* 6 H. of L. 2, 48 ; *Parfitt v. Lawless,* 2 P. & D. L. R. 462 ; *Mackall v. Mackall,* U. S. S. C. 1890.

None of these texts or cases impugn the doctrine of *Shipman v. Furniss,* and *Waddell v. Lanier, supra ;* but they take a distinction as to the vitiating effect of confidential relations *per se,* in respect to transactions *inter vivos* on the one hand, and testamentary dispositions on the other ; they sustain the conclusions reached in the cases last named, while condemning that of *Moore v. Spier.* Thus, Mr. Schouler says : " Equity appears often to have so far presumed a fraud, where one holding such a confidential relation takes a gift, as at least to have imposed upon him the *onus* of disproving it. Certainly, no such strict rule pertains to the law of wills ; . . . . and where it does not appear that the fiduciary drafted the will, advised as to its contents, or even knew that it was to be made, there can be no imputation of fraud or undue influence."—§ 246. *In re Smith's Will,* Andrews, J., after stating the rule obtaining *inter partes,* that the existence of confidential relations between attorney and client, guardian and ward, trustee and *cestui que trust,* and other persons one of whom is subject to the control of the other, raises up a presumption of undue influence when the dominant party obtains a benefit or advantage of the other, proceeds : " The rule to which we have adverted seems, however, to be confined to cases of contracts or gifts *inter vivos,* and does not apply in all its strictness, at least, to gifts by will. It has been held that the fact that the beneficiary was the attorney, guardian or trustee of the decedent, does not alone create a presumption against a testamentary gift, or that it was procured by undue influence."—95 N. Y. 523 ; *Coffin v. Coffin,* 23 N. Y. 9.

In *Tyson v. Tyson,* 37 Md. 583, it is said, that the doctrine of confidential relations adopted by courts of equity, in regard to contracts *inter vivos,* by which a presumption of undue influence is indulged, casting the burden of proof on the party receiving a gift or advantage, can have no application to wills ; and to this proposition is cited the case of *Parfitt v. Lawless, supra,* where the point underwent a very exhaustive consideration ; and the application to wills of the doctrine obtaining with respect to gifts *inter vivos,* between persons occupying confidential relations to each other, was flatly and unquali-

[Bancroft v. Otis.|

fiedly denied. In delivering the opinion of the court, Lord Penzance observes: " This rule was granted in order to consider a suggestion, strongly pressed, that the rules adopted in courts of equity, in relation to gifts *inter vivos*, ought to be applied to the making of wills. In equity, persons standing in certain relations to one another—such as parent and child, man and wife, doctor and patient, attorney and client, confessor and penitent, guardian and ward—are subject to certain presumptions, when transactions between them are brought in question; and if the gift or contract, made in favor of him who holds the position of influence, is impeached by him who is subject to that influence, the courts of equity cast upon the former the burden of proving that the weaker was not unduly impressed by the natural influence of the stronger, or the inexperienced overreached by him of more mature intelligence. Applying this view of the subject to the making of a will, it was contended in this case that it was enough to show that a legatee fell within the class enumerated, and that having done so, the *onus* was cast upon him of proving that his legacy was not obtained by undue influence. It would be an answer to this argument to say, that this has never been, and is not the law, in this or any other court, in regard to wills."—2 P. &. D. L. R. 468.

We need not pursue this branch of the discussion further. Other texts and adjudged cases might be cited and collated to the same effect of those already adverted to. But it is not necessary, we think. Enough has been said to demonstrate that the overwhelming weight of authority is against the conclusion reached by this court in the case of *Moore v. Spier*. Not only so, but it has also been demonstrated upon authority that the doctrine of *Shipman v. Furniss*, and *Waddell v. Lanier*, is an entirely different matter from the question presented in *Moore v. Spier*, and can not be called, with any degree of plausibility even, to the support of the proposition there announced as applicable to wills. No reasons are given, it may be noted, for the conclusion there attained, except by adoption of the reasoning of the two earlier cases cited, which was not pertinent to the question in hand, and enforced a result not referable to analogous considerations.

Yet, notwithstanding all this, we would still feel constrained, as before stated, to adhere to *Moore v. Spier*, if it could be supported on principle, whatever violence to recognized authority might be involved in such a course. We do not think, however, that the result there reached can be logically sustained. The doctrine of presumed undue influence against the dominant party, in transactions *inter vivos*, seems to us

[Bancroft v. Otis.]

eminently sound and just. It proceeds, primarily, upon the natural assumption, that a living person, having, it is to be supposed, a need for his property, or, at least, a desire to retain it, during life, will not part with it without a measurably adequate equivalent. Where it is made to appear that he has given it away, and that to one who occupies a position of domination in relation to him, the presumption still is, that he has not freely deprived himself of it, and its use and enjoyment, but that his act was induced by the undue exercise of the influence which the beneficiary is shown to have had over him ; and this presumption must be met by the donee, and rebutted, else, in equity, it becomes as a fact proven,—a vitiating factor in the transaction. With respect to testamentary dispositions, the primary presumption, upon which the whole superstructure of the doctrine of presumed undue influence in contracts and gifts *inter vivos* rests, is entirely lacking. They take effect upon the death of the donor. They involve no deprivation of use and enjoyment. There can be, with respect to them, no assumption that the donor would not voluntarily part with his property, since, in the nature of things, it must then pass from him to others, selected by himself according to the dictates of his affections, or appointed by the law of descents and distributions ; and in either case without consideration moving to him. It is not out of the usual course of things, but in accordance with the exigencies of mortality, that the property should cease to be his, and should become that of another. And the very considerations which lead to suspicion, which must be removed in transactions *inter vivos*—friendship, trust and confidence, affection, personal obligations—may, and generally do, justly and properly, give direction to testamentary dispositions.

Another very cogent reason for the distinction recognized by the authorities between the two classes of transactions, with respect to casting the *onus probandi* on the issue of undue influence *vel non*, rests on the difference in the attitude which is sustained by a donee or grantee, on the one hand, and a devisee or legatee, on the other, to the act sought to be impugned. It is one of the leading principles of law in this connection, that the burden of proof as to a particular fact is ordinarily upon the party who is in a position to know the truth in respect thereto, and is not, except in certain cases governed by rules which do not obtain here, imposed upon the party who is not supposed to have knowledge in the premises. Transactions *inter vivos* are necessarily transactions *inter partes*. The donee or grantee is present at the time of, or, at least, knows of, and accepts the donation or grant made to him.

[Bancroft v. Otis.]

He, in the very nature of things, is in a position to know all the circumstances of the transaction, and to enlighten the court and jury in regard to them. To require him to do so, therefore, is in harmony with the general rule, and imposes no hardship on him. These reasons for the rule in respect to transactions *inter vivos*, do not obtain with respect to a will. The beneficiary is not a party to its execution, and may, in fact, know nothing of it for years after, nor indeed till the death of the testator; "and," to again quote Lord Penzance, "to cast upon him, on the bare proof of the legacy and his relation to the testator, the burden of showing how the thing came about, and under what influence, or with what motive the legacy was made, or what advice the testator had, professional or otherwise, would be to cast a duty on him which in many, if not most cases, he could not possibly discharge;" and would be, we may add, in many, if not most cases, to destroy a will, not because its execution was the result of coercion or fraud, but because a party who can not be presumed to know the facts, has failed to testify as to them.

Other reasons might be enlarged upon for the distinction we are considering. We will content ourselves with a passing reference to one or two.

The undue influence which will avoid a will, must amount to coercion or fraud; ideas which involve actual intent to control the testator against his will. The law never presumes fraud or the evil intent and unlawful acts essential to the coercion here contemplated. There must be some proof of these things. They can not be considered to have been done, merely because the proponent had the power to coerce, or to defraud. Undue influence with respect to gifts and conveyances *inter vivos* is a very different matter. It may exist without either coercion or fraud. It may result entirely from the confidential relation, without activity in the direction either of coercion or fraud, on the part of the beneficiary occupying the position of dominant influence. It is upon him not only to abstain from deceit and duress, but to affirmatively guard the interests of the weaker party, so that their dealing may be upon a plane of equality, and at arms' length. To presume undue influence in such case, therefore, is not to presume fraud or coercion, or any act which is *malum in se*, but simply the continuance of the influence which naturally inheres in and attaches to the relation itself.

Again, it is said that the equitable doctrine, that contracts, gifts, &c., between parties occupying confidential relations, will be presumed to have resulted from undue influence, can not be applied to wills, because they are not of equitable cog-

nizance, but their validity was formerly determinable, as to realty, in an action of ejectment by the heir, and as to personalty in the ecclesiastical courts; and as to both, in our jurisprudence, is triable by a common-law jury, in a court not invested with the administering of the principles of equity. Authorities *supra*, and *Lee v. Lee*, 71 N. C. 145, where it is said: "This equitable doctrine (of presumed undue influence from confidential relations) has never been understood as applying to wills. To so apply it would raise a presumption against every will in favor of a child, a wife, a father, or other relative, and would defeat probably one half the wills propounded for probate." See, also, Adams' Equity, p. 176, to the effect that "The avoidance of transactions on the ground of fraud is a copious source of jurisdiction in equity. With respect to fraud used in obtaining a will this jurisdiction does not exist."

The discussion need not be further pursued. Our consideration of the authorities, and also of the reasons which underlie the true doctrine in the premises, drive us to the conclusion, that the case of *Moore v. Spier* is unsupported by either, and must be overruled. And we return to the rule as it was really held in *Lyons v. Campbell*, 88 Ala. 462, and other adjudications of this court, that the existence of confidential relations between the testator and principal or large beneficiary under the will, *coupled with* activity on the part of the latter in and about the preparation or execution of the will, such as the initiation of proceedings for the preparation of the instrument, or participation in such preparation, employing the draughtsman, selecting the witnesses, excluding persons from the presence of the testator at or about the time of the execution, concealing the making of the will after it was made, and the like, will raise up a presumption of undue influence, and cast upon him the burden of showing that it was not induced by coercion or fraud on his part, directly or indirectly; but that no such presumption can be predicated alone on confidential relations. *Hill v. Barge*, 12 Ala. 687; *Daniel v. Hill*, 52 Ala. 430, 437; dissenting opinion of Handy, J. in *Meek v. Perry*, 36 Miss. 190, approved in *Daniel v. Hill; Wheeler v. Whipple*, 44 N. J. Eq. 142; Bailey *Onus Probandi*, pp. 385–407; *Leeper v. Taylor*, 47 Ala. 221.

We do not deem it necessary to examine in detail the remaining charges given at the instance of the contestants. Several of them are open to the objection of being argumentative; such, for instance, are those numbered 3, 3*a*, and 4. It is not stating an erroneous proposition of law to inform the jury that they "may look to" this fact, or "may consider" that

[Jackson v. Jackson.]

fact, or that a certain other fact "is pertinent to the inquiry," &c., for all evidence properly admitted is pertinent, and the jury undoubtedly has the right to look to and consider any fact which has been adduced before them; and hence, no reversal can result from the giving of such charges. But, while all this is true, the court is under no duty to accentuate, emphasize, and give additional force to the argument of counsel, by embodying them in his instructions to the jury.—*Hawes v. State*, 88 Ala. 39; *Rains v. State, Ib.* 91; *Riley v. State, Ib.* 193; *Carrington v. L. & N. R. R. Co., Ib.* 472; *Pellum v. State*, 89 Ala. 32; *Kirby v. State*, 89 Ala. 64; *Watkins v. State, Ib.* 89; *Hussey v. State*, 86 Ala. 34.

Others of the instructions may be faulty, in that they tend to mislead the jury, but such tendency would not avail to reverse the judgment. It should have been met and remedied by requests for explanatory instructions. Nor need we refer specially to the instructions which are claimed to be abstract. That infirmity, if it exists, could not be made the basis of revisory action on our part, unless we could see the effect of it was to mislead the jury to appellant's injury.

It is unnecessary to the disposition of this appeal that we should definitively pass upon charge numbered 5, bearing upon the testimony of the physician in respect to the mental condition of the testator. It will suffice to say that we are not clear but that that charge involves error, as being an invasion of the province of the jury.

We shall not consider the point urged upon us with respect to the verdict of the jury. Were that question determined in the line of appellant's insistance, it would still rest in the discretion of the court, either to reverse the judgment below, and render judgment here, or to reverse the judgment, and remand the cause; and in the exercise of that discretion, we should send the case back for re-trial in the Probate Court, as we now do, pretermitting consideration of the sufficiency and effect of the verdict.

For the errors committed in giving charges 1, 2, 12 and 13, the judgment is reversed, and the cause remanded.