# Chandler v. Jost.

*Contested Probate of Will.*

1. *Undue influence; relevancy of evidence as tending to show.*—When the probate of a will is contested on the ground of undue influence, evidence of the nature and character of the relations, dealings, and transactions between the proponent and the testator, and of the pecuniary embarrassment and distress of the testator, who borrowed money from the proponent at the time the will was executed, is admissible.

2. *Charges objectionable for generality, or obscurity, or misleading,—, without explanation.*—A charge which asserts a correct legal proposition, but is objectionable on account of its generality, or obscurity, or because it is calculated to mislead the jury, is not cause of reversal; the adverse party should protect himself by asking a qualifying or explanatory charge.

3. *Undue influence; wills disposing of property to a stranger, in exclusion of testator's family; charge on subject.*—The mere fact that a testator does not distribute his property to those of his own blood, but to strangers, is only a circumstance to be weighed by the jury in connection with the other proof, in determing the issue of undue influence, where the probate of a will is contested on that ground; but a charge in such case, which, after correctly defining "undue influence" instructs the jury that, "if this influence produces an unnatural will,

Vol. 96.

[Chandler v. Jost.]

if it disposes of testator's property to a stranger, to the exclusion of his family, the influence is undue, and invalidates a will," is not erroneous.

4. *Charge on part of evidence.*—A charge which singles out and gives undue prominence to a particular fact in proof, to the exclusion of other material testimony on the same point, has a tendency to mislead the jury; and such a charge may properly be refused.

5. *Confidential relations between the testator and the principal beneficiary under the will; burden of proof.*—Where confidential relations existed between the testator and the principal beneficiary under his will, who is also the proponent, the mere passive presence of such person at the time and place of the execution of the will is not sufficient to give rise to the inference of undue influence on his part, and to cast on him the burden of repelling such inference by proof; to have that effect, there must be, in addition to the fact of his being present at the execution of the will, evidence of activity on his part in or about the preparation or procurement of the will, or of other participation or agency in the proceedings leading to or resulting in the execution of the will.

APPEAL from the Probate Court of Montgomery.

Tried before the HON. F. C. RANDOLPH.

On the trial of this case, as shown by the bill of exceptions, the proponent, Willis L. Chandler, testified that he and the deceased had been very friendly for a number of years, and that he, as a member of the firm of Chandler Brothers, advanced to the deceased certain sums of money; that, to secure one of these loans, the deceased, Fred. Jost executed to Chandler Brothers a transfer of a life insurance policy, which witness afterwards discovered had been previously transferred to another person; that, to secure another advance, Jost executed a mortgage to Chandler Brothers on some furniture, which turned out to be the property of his wife; that, to secure still another loan, Jost alone executed to Chandler Brothers a lease of a house and lot which belonged to his wife; that his wife repudiated the lease; that Chandler Brothers were unable to collect the amounts due to them from Jost; and that "for these and other reasons witness had refused for two years before the execution of the paper propounded as a will, to loan said Jost any money, although said Jost often applied to him for money, and begged witness to lend it to him." This witness further testified, that about a week before the making of the will said Jost came to the witness, and stated that he had to have three hundred dollars, or go to the coal mines; that he had been indicted for selling liquor without a license, that his trial would come up in a few days, and that if he did not get the money to pay the fine and costs, he would be sentenced to the coal mines, and his wife and family would be disgraced; that witness at first refused to

[Chandler v. Jost.]

lend Jost any money, and recalled to him the previous loans, and the fact that Jost's wife had claimed the furniture and the land, and had thereby defeated the claims of Chandler Brothers; that Jost continued to beg and importune witness to let him have the money required; that finally witness agreed that a policy of insurance for the sum of five thousand dollars should be taken out on the life of Jost, which should be transferred to Chandler Brothers, as security for the present advance and for the old indebtedness; that such policy was accordingly obtained, and the witness and Jost went to the office of Col. Blakey, to have the transfer prepared; that Col. Blakey suggested that a transfer of the policy to Chandler Brothers would, not give them the full ownership in it, but would only be security to them for the debt actually due; that Jost said that he wanted to give Chandler Brothers all the proceeds of the two policies of insurance he had on his life, and asked how that could be done; that Col. Blakey said it could be done by Jost making a will; that Jost then directed Col. Blakey to write the will, which he did, and Jost then executed it. The will was dated March 13, 1888.

The contestants offered in evidence the records of the City Court of Montgomery showing the trial and conviction of said Jost on the 15th day of March, 1888, on the charge of selling liquor without a license; and also offered in evidence a receipt of the clerk of said court, showing the payment by said Jost on the 15th day of March, 1888, of the fine and costs in said case, amounting to about two hundred dollars. The proponent objected to the introduction of this evidence, the court overruled the objection and permitted said evidence to go to the jury, and to this ruling the proponent excepted.

The contestants offered in evidence the following paper, which Mrs. Jost testified that she received from her husband during the time when he was having money dealings with Chandler Brothers, that she did not know the exact time, ecuted it herself.     Her bill, the rulings on which the present but that it was some time before the execution of the will: "Dear Frances, You misunderstood my note entirely. You were not asked to sign anything either now or in future by Mr. Chandler, or any body else. So don't fret any more, and quit worrying, as you are not hurt. Yours, 'Fred'." The proponent objected to the introduction of this paper as evidence, the court overruled the objection, and admitted the paper in evidence, and to this ruling the proponent excepted. The contestants offered in evidence the following

paper, which Mrs. Jost testified was also received by her from her husband about the same time: "Dear Frances, Will be home to-night with Chandler. I have fixed it. Have my note for six months, subject to renewal. So don't fret any more, if business is dull. Will be home by 10 o'clock. Yours." The proponent objected to the introduction of this paper as evidence, the court overruled the objection, and admitted the paper in evidence, and the proponent excepted to this ruling.

Upon the introduction of all the evidence, the court charged the jury as follows: "Chandler Brothers have propounded to this court for probate the alleged will of F. C. Jost, deceased, under which instrument they are the largest beneficiaries. The widow and children of decedent have instituted this contest, on the ground that undue influence was used in procuring its execution, because, as they say, Jost was largely indebted to Chandler Brothers, and used this power to coerce him into making this will. It is my duty to give, and your duty to observe, these instructions of law, which will aid you in arriving at your verdict. Undue influence is that influence which coerces a testator to do what is against his will, or to substitute the will of another for his own, and it matters not whether the party using this undue influence derives any personal benefit from it or not. This coercion may be physical, moral, mental or intellectual. Whatever destroys the free agency of, and constrains a testator to do what is against his own will, or to substitute the will of another for his own, is undue influence in testamentary law. *And this undue influence is not to be measured by its amount or extent, but by its fruits and results.* Your inquiry, therefore, is, was undue influence used, and did that influence procure the making of the will in question? Every influence, no matter how great, although exercised successfully, is not necessarily undue. Another element must be present: the influence must not only have existed, but must have been used, and produced a will different from what the testator, if free, would have made. *If this influence produces an unnatural will, if it disposes of testator's property to a stranger, to the exclusion of his family, the influence is undue, and invalidates a will.* Now, gentlemen, it is your duty to declare if that undue influence existed in this case. The general rule of law in a contest of a will for undue influence is that the burden of proof is put upon the contestant; that is, the proof of the legal execution of a will having been made by a testator of sound mind at the time of its execution, and who is otherwise legally qualified

to make a will, puts upon the contestant the duty of show-
ing that the will was the result of undue influence exerted
upon the testator.   To this general rule, however, there are
exceptions.   *Where one using this undue influence stands in
some confidential relation towards the testator, such as attorney,
guardian, agent, etc., and receives large benefits under the will,
then the burden of proof shifts from the party seeking to defeat
to the party seeking to establish the will, and the latter must satisfy
the jury that the will was the free act of the testator.*   If from
the evidence you believe that Chandler Bros. possessed
great influence over Jost by reason of his indebtedness to
them, or any other reason, and by that influence procured
the making of the will in question; that Chandler Bros.
stood in confidential relations to Jost, and receive large ben-
efits under this will, to the exclusion of those naturally enti-
tled to his bounty,—you will find this will void for undue
influence.   The fact that Jost was largely indebted to Chan-
dler Bros., and that they are large beneficiaries under this
will, raises no presumption of law against the validity of the
will.   Undue influence is rarely susceptible of direct or posi-
tive proof; it is more often invisible, subtle, and mysterious,
*and must alone be inferred from all the facts and circumstances
surroundiag a case.*   Hence courts have found it necessary
to throw wide open the doors of evidence, so that juries may
look at all the circumstances that throw light upon the rela-
tions and dealings of the parties in contested will cases ;
and in this case, it is your duty to view from its source to
the time of the making of the will in question all the circum-
stances that throw light upon the relations between Chandler
Brothers and Jost, in order to enable you to determine
whether Chandler Brothers possessed undue influence over
Jost, whether it was used, and whether its use produced the
making of this will.   If from all the evidence you find these
facts to have existed, you must declare this will void; if, on
the contrary, you find these facts did not exist, you will de-
clare the will valid."

The proponent separately excepted to those portions of
the above charge which are italicized; and also separately
excepted to the refusal of the court to give each of the fol-
lowing charges in writing requested by him :   "(6.) In de-
termining whether this is an unnatural will, the jury may
look at the fact, if it be a fact, that Jost's wife had a sepa-
rate estate of her own, worth from $10,000 to $12,000, and
he had nothing."   "(7) If the jury believe all the evidence,
they will find in favor of the validity of the will."   "(8) The
mere fact that Chandler was the assignee of a policy of in-

surance as security for a debt does not, of itself, constitute such a confidential relation between the parties as the law looks at with suspicion in determining the question of undue influence."

At the request of the proponent, the court gave the following written charge : "(2) Mere suspicion of undue influence will not invalidate a will; the law requires that it should be proved to the satisfaction of the jury." The contestant then requested the court to give the following written charge : "The charge No. 2, viz., 'mere suspicion of undue influence will not invalidate a will; the law requires that it should be proved to the satisfaction of the jury,'—is not intended to change the general charge as to the question of the burden of proof, where one standing in some confidential relation towards the testator is present when the will is made, or is active in having the will made, and receives large benefits under the will. The burden of satisfying the jury that there was no undue influence exercised in the procurement of the will is upon the proponent, if he be the beneficiary." The court gave this charge, and the proponent duly excepted thereto.

The several rulings on the evidence, and on the charges given and refused, are assigned as error.

DAVID T. BLAKEY, for appellant.

THOMAS H. WATTS, *contra.*

THORINGTON, J.—Appellant propounded for probate in the Probate Court of Montgomery county the last will and testament of Fred. Jost, deceased. By the terms of the will, two policies of insurance which had been procured by the testator on his own life were bequeathed to Chandler Bros., of which firm appellant was a member. The residue of the testator's property is directed by the will to be distributed according to the laws of Alabama in cases of intestacy. One of the policies of insurance bequeathed by the will was placed by the testator, some time before the will was executed, with said firm of Chandler Bros., as collateral security for an indebtedness from the testator to them, which indebtedness, the proof tends to show, amounted to something more than half the insurance covered by the policy. The other policy of insurance was placed by the testator, before the will was made, with the firm of Moses Bros., to secure a debt the testator owed them, and which amounted to less than the face value of the policy. These two insu-

rance policies were substantially all the property owned by the testator at his death, but his wife owned property in her own name. Appellees are the widow and children of the testator, and contested the will on the ground of undue influence exercised by appellant's firm over the testator, by means of which they procured the execution of the will in their favor. There was a jury trial, resulting in a verdict and judgment against the validity of the will. Proponent reserved a bill of exceptions, and brings the case to this court by appeal.

We have carefully considered the exceptions reserved by appellant to the rulings of the court on the testimony, and discover no error which would have been prejudicial to the proponent. In all cases involving questions of fraud, it is necessary that much latitude should be allowed in the range of the testimony, for the reason, as stated by this court, "it is hardly ever possible to prove fraud, except by a comprehensive and comparative view of the actions of the party to whom the fraud is imputed, and his relative position a reasonable time before, at, and a resonable time after, the time at which the act of fraud is alleged to have been committed."—*Snodgrass v. Branch Bank*, 25 Ala. 174; *Kramer v. Weinert*, 81 Ala. 414. That the testimony offered is apparently of little relevancy or weight, or remotely touches the inquiry, is not sufficient to put the court in error in admitting it to be considered by the jury in connection with all the other facts and circumstances in proof, and in the light of which they are to determine its evidential value. The tendencies of the testimony offered by the contestants, and admitted, against the objection of the proponent, were to illustrate the nature and character of the relation, dealings and transactions between the proponent and the testator, and also the pecuniary embarrassment and distress of the testator, which would naturally so operate upon his mind as to probably make him susceptible to undue influence of a character involving the promise or hope of temporary relief. In *Knox v. Knox*, 95 Ala. 495, this court said: "When the probate of a will is contested on the ground of mental incapacity or undue influence, the real issue is as to the condition of the mind, or the operation and effect of undue influence, at the particular time of the execution of the will. The condition of the mind of the testator prior to the exetion of the will, and all facts which tend to elucidate its condition or to show the freedom of will, or that it was unduly coerced and influenced at the particular time, although such facts and circumstances may have existed or occurred

previous to the time of the execution of the will, are admissible in evidence." The Probate Court did not err in permitting the testimony objected to by proponent to go to the jury.

It has often been declared by this court that a charge which asserts a correct legal proposition, but is objectionable on account of its generality or obscurity, or because it is calculated to mislead the jury, is not cause of reversal, and that the adverse party should protect himself by asking a qualifying or explanatory charge.—*O'Donnell v. Rodiger*, 76 Ala. 222. Several of the objections urged by appellant to the charge of the court are of this nature, and can not avail on this appeal; but there are other exceptions to various portions of the charge of the Probate Court to the jury which make it necessary for us to state some of the general principles of law applicable to cases of this kind, and by which the portions of the charge so excepted to, and the charges given and refused, may be safely tested.

If a testator is mentally capable of understanding the disposition he is making of his property, and acts of his own volition, it is immaterial to whom he gives his property, so far as the gift affects the validity of the will; and the mere fact that the testator does not distribute his property to those of his own blood, but to strangers, does not raise the presumption of testamentary incapacity or undue influence, or shift the burden upon the proponent or the beneficiaries under the will to show a sound mind or freedom of the will, but it is only a circumstance to be weighed by the jury in connection with the other proof in determining the issue; "the law does not undertake to prescribe the duties of a testator towards his family in regard to the disposition of his property."—*Knox v. Knox*, 95 Ala. 495; *Eastis v. Montgomery*, 93 Ala. 293; *Coleman v. Robertson*, 17 Ala. 87; *Roberts v. Trawick*, 13 Ala. 78; *Salisbury v. Aldrich*, 5 West. Rep. 698.

Although confidential relationship may, of and by itself, give rise to the presumption of undue influence on the part of the beneficiary in cases of contracts or gifts *inter vivos*, and cast on him the burden of proof, the rule has no application to wills. On the contrary, as said by this court in another case, "the very considerations which lead to suspicion, which must be removed in transactions *inter vivos*, friendship, trust and confidence, affection, personal obligations, may, and generally do, justly and properly, give direction to testamentary dispositions."—*Bancroft v. Otis*, 91 Ala. 279. Confidential relations between the testator and a devisee under his will, when the latter is a principal or large

beneficiary under the will, and such relationship is accompanied by activity on the part of such devisee or legatee "in and about the preparation or execution of the will, such as the initiation of proceedings for the preparation of the instrument, or participation in such preparation, employing the draughtsman, selecting the witnesess, excluding persons from the testator at or about the time of the execution, concealing the making of the will after it was made, and the like, will raise up a presumption of undue influence, and cast upon him the burden of showing that it was not induced by coercion or fraud on his part, directly or indirectly. *Bancroft v. Otis, supra.* What is undue influence, such as will invalidate a will, has frequently been defined in the decisions of this court, and as thus defined it has for its basis either coercion or fraud. It must be tantamount to force which produces fear or destroys the free agency, or there must be deception or circumvention; and, whether in the form of coercion or fraud, it must constrain or deceive the testator into doing what is against his will; and, when a will is contested on this ground, the contestant assumes the burden of proving that the will was superinduced by one or the other of these agencies. If, however, it be shown that the proponent is a principal or large beneficiary under the will, and occupied a position of trust or confidence towards the testator, and actively participated in the preparation or the execution of the will, or was actively officious in shaping or controlling the circumstances surrounding the testator at the time of the preparation or execution of the will or the proceedings initiating the same, as indicated in the case of *Bancroft v. Otis,* then the burden of proof is shifted to the proponent to show that the will is the product of the free and intelligent will of the testator, and that the testator knew its contents.—*Eastis v. Montgomery,* 93 Ala. 293; *Lyons v. Campbell,* 88 Ala. 462; *Bancroft v. Otis,* 91 Ala. 279.

The principles above announced, in their application to the facts of this case and the exceptions taken to the instructions given and refused by the court, relieve the case from difficulty.

The first exception to the general charge of the court is predicated alone on the ground that the portion of the charge to which the exception is directed is misleading, and, for the reasons heretofore given, it can not prevail.

The second exception is to that part of the general charge as follows: "If this influence produce an unnatural will, if it disposes of testator's property to a stranger, to the exclusion of his family, the influence is undue, and invalidates a will."

[Chandler v. Jost.]

This portion of the charge, though perhaps in the abstract misleading, is to be considered in connection with the charge as a whole. It is not to be dissociated from what precedes and follows it in the same charge, and weighed or tested as an isolated proposition, but in its relation to the whole charge. So considering it, the words "this influence" manifestly have reference to the *undue influence* defined, and correctly defined, in a preceding portion of the charge. The proposition embraced in the portion of the charge challenged by the exception is, therefore, not only correct, as far as it goes, but might have been stated much broader. The undue influence, to which reference is made by this portion of the charge, it may be said, would not only invalidate an unnatural will, but any other will that might be superinduced by such influence. There was no error in the portion of the charge covered by this exception.

That portion of the general charge of the court to which the third exception is addressed, beginning with the words, "where one using this undue influence stands in some confidential relation towards the testator," &c., omits the element of actual participation on the part of the beneficiary in procuring the preparation or execution of the will, and without which mere confidential relations between the testator and beneficiary will not shift the burden of proof. But, inasmuch as it employs the words, "this undue influence," which refer to the undue influence defined in a preceding part of the charge, we can not say there is error in the instruction. We think it misleading and confusing in its tendency, but that alone does not make the giving of such a charge reversible error.

The test as to whether the will was an unnatural one, as presented by the record, was not simply whether the will was made in favor of a stranger, instead of those of the testator's blood, but whether, in view of all the circumstances surrounding the testator at the time, and attending its execution, it was contrary to the feelings and desires which would naturally and ordinarily influence one in the testamentary disposition of his property. Family discord, unfilial conduct of children, the separation of husband and wife, or marital unhappiness, may result in the exclusion of family or members of the family from testamentary provision by a will, which, under the circumstances, would be a more natural expression of the testator's bounty than if they were included. So, also, if the testator's family is otherwise provided for, and therefore not dependent upon him or his estate for a livelihood, and he prefers in his will a stranger to his blood,

to whom he feels himself obligated for favors or benefits, or to whom he is bound by strong or peculiar ties of friendship, a testamentary disposition in favor of such an one, to the exclusion of the family, might not, under the circumstances, be an unnatural will. While such testamentary dispositions of property ought to be carefully scrutinized, it is a question for the jury under all the facts in proof to determine whether a will makes such an unnatural disposition of the testator's property as to give rise to an inference of undue influence or mental incapacity.—*Poole's Heirs v. Poole's Exrs.*, 33 Ala. 145.

In the case under consideration, there is proof tending to show that the insurance policies, after satisfying the debts they were pledged to secure, would yield something more (but how much more does not clearly appear) than was necessary to satisfy such debts, and that the testator's wife in her own right owned property estimated by some of the witnesses to be worth from about $10,000.00 to $12,000.00, and that there were two children about grown, and that the wife had twice frustrated the purpose of the testator in his efforts to secure sums of money loaned him by proponent's firm,—once by asserting claim to furniture he had mortgaged to said firm, and, again, to the house and premises on which he had given proponent's firm a five-years lease, and in consequence of which they had afterwards repeatedly refused to make the testator further loans. So, also, there was testimony tending to show that the testator left no property except the insurance policies, that his wife's property was worth much less than ten thousand dollars, that he left two daughters surviving him, as between whom and himself there does not appear to have been any cause for ill will or unnatural prejudice. Under these circumstances, while it was proper for the jury, as the sixth charge requested by the proponent declares, to consider the fact that the wife owned a separate estate, in determining whether the will was an unnatural one, yet it was the duty of the jury to look to that fact in connection with the whole testimony, and not to the exclusion of the other facts in proof. The charge in question, while it may assert a correct proposition at law if considered merely in the abstract, when applied to the testimony its tendency would have been, if given, to mislead and confuse the jury. It singles out and gives undue prominence to a particular fact in proof, to the exclusion of other material testimony bearing on the same point. The eighth charge requested by the proponent is subject to the same objection.

[Chandler v. Jost.]

While the mere relation of pledgor and pledgee, between the testator and the proponent, or the mere fact of the latter being the assignee of a policy of insurance to secure a debt, would not, of itself, constitute a confidential relation between proponent and the testator, in the sense implied in law in testamentary cases, there were other facts in proof to be considered by the jury in connection therewith. For instance, the friendly relations proponent testified as subsisting between the members of his firm and the testator, the pecuniary embarrassments and distress of the testator, and his habit of applying to proponent's firm for relief, together with all the other facts in proof; though we are not to be understood as indicating that all these facts, together, would have constituted such a confidential relationship. That is a question for the jury. The refusal of the trial court to give a charge of this kind is not a reversible error.—*Alabama Great Southern R. R. Co. v. Hill,* 93 Ala. 516; *Eastis v. Montgomery,* 93 Ala. 293; *Snider v. Burke,* 84 Ala. 53.

The charge given by the court at the request of the contestant, in explanation of charge No. 2, which the court had given for proponent, is erroneous, because it involves the proposition that one standing in a confidential relation to the testator, who is present at the execution or preparation of a will, and is largely benefitted by the will, must, from the mere fact of such presence, assume the burden of disproving the exercise of undue influence in procuring the will. The mere passive presence of such a person at the time and place of the execution of a will is not sufficient to give rise to the inference of undue influence on his part, and to cast upon him the burden of repelling such inference by proof. To have that effect, in addition to the fact of being present at the execution of the will, there must be activity on his part in and about the preparation or procurement of the will, or other participation or agency in the proceedings leading to or resulting in the execution of the will, as declared in the case of *Bancroft v. Otis, supra.* The giving of this charge was error.

There was a conflict in the testimony as to the value of Mrs. Jost's separate estate, and the tendencies of the proof were also such that the jury might reasonably have drawn different inferences therefrom, and it has often been declared by this court that the general charge should not, in such cases, be given for either party.—*Payne v. Mathis,* 92 Ala. 585.

The Probate Court, therefore, did not err in refusing to give the general charge requested by proponent.

[Chandler v. Jost.]

For the error of the Probate Court in giving the charge requested by the contestant, its judgment is reversed, and the cause remanded.

Reversed and remanded.