# Eastis *v.* Montgomery.

## Contest as to Probate of Will.

1. *Declarations of devisee and proponent as evidence.*—The declarations of an executor and proponent, one of several beneficiaries under the will, not made in the presence of the testatrix, are not competent as evidence to sustain or defeat the will, whether made before or after its execution; though they might be admissible, in a proper case, to impeach or affect the weight of his testimony.

2. *Undue influence; relevancy of evidence as tending to show.*—On the question of undue influence, the fact that the will makes unequal gifts to the children of the testatrix is a circumstance to be considered by the jury in connection with the other evidence; but the fact that, on a subsequent sale of a part of the land devised, the title-bond

[Eastis v. Montgomery.]

was delivered to the purchaser by the executor and proponent who is charged with having exercised the undue influence, and the purchase-money paid to him, is not relevant or admissible as evidence, when it is shown that he was at the time acting as the general agent of the testatrix, and had charge of all her business, since the presumption would be that he received the money as her agent; and whether it would be competent to prove that the purchase-money received was distributed among the several persons to whom the land was devised, *quære?*

3. *Same; burden of proof in case of confidential relations.*—The existence of confidential relations between the testatrix and one of the executors and chief beneficiaries under the will—as, that he was her general agent, whom she leaned on and trusted—does not raise a presumption that he procured the will by the exercise of undue influence, nor impose on him the *onus* of disproving undue influence.

4. *Will partly valid.*—When the probate of a will is contested on the ground of undue influence, one or more of its provisions may be sustained as valid, while the others are set aside.

5. *What constitutes undue influence.*—Undue influence, such as will invalidate a will, must amount to coercion or fraud—must be tantamount to force or fear, and destroy the free agency of the testator; and mere persuasion or argument, addressed to the judgment or the affections, without any fraud or deceit, is not enough.

6. *Misleading charges*, calling the attention of the jury to particular facts, or unduly emphasizing particular facts, may be refused; but giving such a charge is not a reversible error, when its misleading tendencies might be corrected by an additional, explanatory charge.

APPEAL from the Probate Court of Jefferson.

Tried before the Hon. M. T. PORTER.

In this case, a paper was propounded for probate by Jonathan, Felix and David Montgomery, as the last will and testament of their deceased mother, Mrs. Martha Montgomery; and its probate was contested by Mrs. A. C. Eastis, a granddaughter, principally on the ground that the execution of the will was procured by undue influence on the part of said Jonathan Montgomery. The three proponents were nominated as executors of the will, and were authorized to collect all the outstanding debts due to the testatrix, pay all her debts out of the proceeds, and distribute the residue as follows: (1) pay $1,000 to Fannie Mongomery, an imbecile or insane daughter; (2) pay $5.00 each to certain grand-children, children of two deceased daughters; (3) distribute the residue among the three sons and four other living daughters; and (4), if the sum received by each should be more than $1,000, each should contribute enough to make Fannie's share equal to theirs. On the trial, numerous exceptions were reserved by the contestant to the rulings of the court on questions of evidence, and these rulings are here assigned as error. The opinion seems to state the material facts in reference to this matter, and renders unnecessary any further statement.

The contestant requested the following charges in writing,

[Eastis v. Montgomery.]

and duly excepted to their refusal : (1.) "If the jury believe from the evidence that Mrs. Montgomery, in signing the paper now offered for probate as her will, intended to make the provisions therein set forth for her insane daughter Fannie, but, as to the other provisions of the will, was unduly influenced to make them ; then they may find the will valid as to the provision made for Fannie, and invalid as to its other provisions." (2.) "If the jury believe from the evidence that Jonathan Montgomery, one of the eight children equally provided for in the paper propounded as a will, managed Mrs. Montgomery's affairs for many years, and much of the time lived alone with her and her daughter Fannie, and he was her trusted agent, and she leaned upon him and trusted him ; then the burden of proof was on said Jonathan Montgomery to show that the paper propounded for probate was not the product of fraud, undue influence, or fear, but was the result of free volition on the part of the testatrix." (3.) "While the law does not presume undue influence from the fact that Mrs. Montgomery, when she signed the paper propounded as her will, was surrounded by the persons who were principally benefitted by the will, while the Ellard children and the Hawkins children [children of the deceased daughters] were not about her ; yet this is a circumstance to which the jury may look in passing [?] that the will was the product of undue influence." (4.) "While the court has permitted to go to the jury the conversation with Mrs. Montgomery detailed by Felix Montgomery, after the execution of the paper propounded for probate as her will, to the effect that said paper 'was her will and it should stand ;' such evidence is weak and inconclusive to prove that no undue influence was operative in the making of the will."

The contestant also excepted to each of the following charges, which were given on request of the proponents : (1.) "There is no evidence in this care of any importunity by Jona. Montgomery of his mother to induce her to make the will in controversy." (2.) "There is in this case no evidence of any threats made by Jona. Montgomery towards his mother, to induce or cause her to make the will in controversy." (3.) "Unless the evidence shows that the will was obtained by moral coercion, or by importunity which could not be resisted by the testatrix, they must find the issue in favor of the proponents."

The rulings on evidence, the charges given, and the refusal of the several charges asked, are assigned as error.

WARD & JOHN, and JAS. M. RUSSELL, for appellant.

HEWITT, WALKER & PORTER, and E. K. CAMPBELL, *contra*.

[Eastis v. Montgomery.]

COLEMAN, J.—This case arose on a contest of the probate of the will of Martha Montgomery. The grounds of contest were: 1st, that testatrix was of "unsound mind, and not capable of making any legal disposition of her property;" 2d, that the executors "procured the making and execution of the same by fraud and undue influence practiced by them on the deceased;" 3d, "that said will was not made and executed according to law." After the close of the evidence, "contestant stated she did not insist upon insanity, except to show weakness of mind and susceptibility to being unduly influenced." There was no evidence to show that the will was not formally executed, and we can safely state there is no evidence of fraud or deceit practiced upon testatrix to procure the disposition of the property made by the will. The real and only issue before the jury, in fact, was that of undue influence.

The proof shows that testatrix had ten children, eight of whom were living when she died, and two had died, leaving children, when the will was made. One of the living children, Fannie, was insane, or an imbecile, wholly incapable of providing for herself. Testatrix divided substantially all her property to her living children, making special provision for her imbecile daughter, Fannie, and leaving but nominal gifts to her grand-children, one of whom is contestant. The will was made in September, 1884, and the testatrix died in October, 1889.

Jonathan, an unmarried son, and her daughter Fannie, were living with their widowed mother on her farm at the time of her death, and had lived with her all their lives. Jonathan was her general manager and superintendent, and controlled her business interest without restraint, so far as is disclosed in the evidence. At the time of her death the testatrix was eighty-two years of age. The evidence conflicted as to the state of her health, the strength of her mind and character, for many years prior to her death; the testimony of contestant tending to show she was in poor health, and of feeble mind and character; and that of proponents, that considering her age her health was good, and her character was one of indepence in thought and action.

By the provisions of the will, seven of the living children, including Jonathan, were provided for share and share alike, and if the property reached a certain value, the special provision for Fannie was not to take effect, but in that event the eight living children were in all respects made equal. In 1879, nine years before the will was made, and ten years before her death, the testatrix conveyed to Jonathan seventy acres of land. There was evidence tending to show that there

[Eastis v. Montgomery.]

was an understanding between Jonathan Montgomery and his mother, as to his compensation for living with her, taking care of her and Fannie, and managing the farm. There was evidence that, after the will was made, the testatrix, by deed of gift, conveyed to each of the eight legatees twenty acres of land.

There was evidence on part of contestant, that Jonathan Montgomery was disrespectful and abusive, and ill-treated his mother, and had his own way on the farm and in the management of her business. The evidence for proponents tended to show that he was always kind and careful of his mother's comfort and feelings, and provided well for her and his afflicted sister, and took good care of his mother's property. There is no material evidence in the record to show that any of the legatees had any conversation with the testatrix in regard to the disposition of her property by the will, except the testimony of Jonathan Montgomery. He testified, "We talked about it several times before she came to make it. I told her, if she wanted to come to town to have her will written, I would bring her the next day;" that she requested him to do so, and he brought her to his sister, Mary Anderson; that at her request he went for Judge Porter to write the will. He says, "I never made any suggestion to her about the will."

Judge Porter's evidence is to the effect, that he received his instructions from the testatrix as to how the will should be written; that she dictated to him how her property was to be disposed of; that he made the will as she instructed him, read it over to her, and it was approved and then executed by her. There was evidence tending to show that afterwards she expressed herself satisfied with the will. There was also evidence tending to show that she expressed herself as desiring that her living children should have her property. There was other evidence in the case, but this is deemed a sufficient statement to properly understand the rulings of the court upon the admission and exclusion of evidence, and the charges given and refused, to which exceptions were reserved.

It is not seriously contended that the beneficiaries under the will, other than Jonathan Montgomery, exercised an undue influence upon the testatrix, in procuring the making of her will, or the disposition of her property. Declarations made by Jonathan Montgomery, if material, might be admissible, in a proper case, to impeach or lessen the weight of his testimony; but declarations made by him, there being others interested in the probate of the will, in the absence of the testatrix, whether before or after the making of the will, are not competent either to support or invalidate the will.—*Rob-*

*erts v. Trawick*, 13 Ala. 68; *Bunyard v. McElroy*, 21 Ala. 317; *Blakey v. Blakey*, 33 Ala. 617; Schouler on Wills, § 244.

The foregoing principle of law disposes of a great many objections and exceptions as to the admissibility of evidence. The error in refusing to allow the witness Ellard to prove the conveyance of seventy acres of land in 1879 was cured by its subsequent proof. It was proven by the grantee himself and other witnesses, and was not a controverted fact. The same is true as to the twenty acres of land given to each of the eight children.

Contestants offered to prove by the witness Anglin, that witness and W. J. Cameron, in 1887 (after the will was made), purchased one hundred acres of the farm land of testatrix; that they received from Jonathan Montgomery the bond for titles which was executed by testatrix, and that they paid Jonathan Montgomery $6,666 in part payment of the purchase-money. The court excluded the evidence, and contestant excepted. If contestants had stated to the court they expected to prove that testatrix gave this money to Jonathan Montgomery, or that any disposition was made of it not in accordance with her own free will, or that any unnatural disposition was made of it by the testatrix, or had proposed to connect it with any other proof which would have made it relevant and competent, then, upon such showing, if the court had excluded the testimony, such ruling would have been erroneous. The undisputed testimony is, that Jonathan Montgomery was the agent of testatrix—that he attended to all her business. The offer to prove the sale of the land, for which testatrix executed her bond for title, and the payment of the money to him, without more, could have no bearing upon the question of undue influence. The presumption from such proof alone, he being her agent with general authority as stated before, would be, that he received the money as her agent.

The court sustained an objection to the following question propounded by contestant to Jonathan Montgomery: "Was not the money received from Anglin and W. J. Cameron, for the property, sold them, divided among the eight living children?" No proof had been introduced of the sale of the land to Anglin and W. J. Cameron. The offer to prove the fact had been made, and, as we have seen, evidence properly excluded. The question was objectionable in form, in assuming the sale. If the proof had shown the sale of the land, and distribution of the purchase-money to the legatees or beneficiaries to whom the land had been given by the will, whether such proof would tend to show a ratification of the will, or undue influence at the time it was made, *quære?*

[Eastis v. Montgomery.]

In the case of *Bancroft v. Otis*, 8 So. Rep. 286; 91 Ala. 279, after a careful review of the authorities, this court declared the rule as to the burden of proof which applied to transactions between parties *inter vivos*, did not apply to wills. The validity of the deeds of gift executed by the testatrix to her eight children, and which took effect during her lifetime, is not an issue in this proceeding. The evidence of such gifts was admissible on the issue of undue influence. Whenever a party by will cuts off any of his children from participation in his estate, or makes unequal disposition of it without reason, it is a circumstance to be considered by the jury on the issue of undue influence. If the evidence shows that the grantor had disposing capacity, or was not unduly influenced, he can make such disposition of his property, however partial or capricious, as he may desire; but the fact of unequal gifts to his children is admissible, to be considered with the other evidence.—*Coleman v. Robertson*, 17 Ala. 87; *Roberts v. Trawick*, 13 Ala. 78.

The facts stated upon which the charge is predicated as to the burden of proof, were not sufficient to show that the burden had been shifted; and under the rule declared in *Otis v. Bancroft*, this charge was properly refused.

When undue influence is supposed to have been exercised in obtaining a will, it seems that the whole will is not necessarily void, but it will be left to the jury to determine what gifts were obtained by undue influence, and such gifts only will be declared void.—1 Jarm. on Wills, 5 Amer. Ed., p. 70-71. If the whole will was the effect of undue influence, the will as a whole will be void; but, if a part of the legacies were the result of undue influence, and there were others which were the result of the free will of the testatrix, the latter may stand, although the former would be set aside.—*Florey v. Florey*, 24 Ala. 248; *Lyons v. Campbell*, 88 Ala. 462. And this principle would apply although the contest, by the pleadings, was directed against the validity of the whole will, if the proof was sufficient to show that only a part of the legacies were the result of undue influence. If the jury were reasonably satisfied from the evidence that the provision for Fannie was the result of the testator's own free will, and there were other provisions of the will obtained by undue influence, it would be error to refuse, upon written request, to instruct the jury that they could so find.

At the request of proponents, the court instructed the jury: "There is no evidence in this case of any threats made by J. Montgomery towards his mother, to induce or cause her to make the will in controversy." The writer of this opinion

thinks this charge ought not to have been given. It was misleading, if not positively erroneous, as an invasion of the province of the jury. In determining whether a general affirmative charge ought to be given in any case, the court should consider whether there is the slightest evidence sustaining the contrary proposition. Excluding in the present case all the testimony offered by proponents, and taking for granted that all offered by the contestant was true, is there no evidence from which a jury might be justified in drawing a contrary conclusion? A menace or threat may be made in many ways. It would not be proper to emphasize any facts by specially referring to them. It is not sufficient that such testimony has been overwhelmed by opposing testimony, in the judgment of the court. The jury are the judges of the weight of evidence, and any invasion of their province is error. A majority of the court, however, are of the opinion there was no reversible error in this charge; and if opposing counsel had deemed it misleading, it was their privilege and duty to ask for explanatory charges on this question.

The undue influence which will avoid a will, must amount to coercion or fraud—an influence tantamount to force or fear, and which destroys the free agency of the party, and constrains him to do what is against his will. Mere persuasion or argument addressed to the judgment or affections, in which there is no fraud or deceit, does not constitute undue influence.---*Bancroft v. Otis, supra; Lyons v. Campbell, supra; Leeper v. Taylor*, 47 Ala. 222; *Taylor v. Kelly*, 31 Ala. 64; *Pool v. Pool*, 35 Ala. 17. The charges given in this respect asserted correct propositions of law.

Facts in evidence may be pressed by counsel in argument, but charges which unduly emphasize any statement of facts may be refused.—*Mobile Savings Bank v. McDonnell*, 89 Ala. 445; *Pellum v. State, Ib.* 32, and authorities. The third and fourth charges asked by proponents were, for these reasons, objectionable. The first charge asked by the contestants asserted a correct principle of law, and should have been given. That testatrix intended to make special provision for Fannie, was not seriously controverted. The jury may have been satisfied that the provision for her was the result of a free exercise of testatrix's will, and may have believed otherwise as to other beneficiaries under the will.—*Lyons v. Campbell*, 88 Ala. 462; *Florey v. Florey*, 24 Ala. 248.

For the error in refusing to give the first charge asked for by contestants, the case must be reversed.

Reversed and remanded.