# Eastis *v.* Montgomery.

### Contested Probate of Will.

1. *Declarations of devisee and proponent as evidence.*—The declarations of an executor and proponent, one of several beneficiaries under the will propounded for probate, not made in the presence of the testatrix, are not competent evidence for the contestant, whether made before or after the execution of the will.

2. *Undue influence; relevancy of evidence as tending to show.*—As tending to prove undue influence over the testatrix by one of her sons, one of the executors and proponents, who was his mother's general agent in the transaction of her business, the contestant can not be allowed to prove that, on a sale of land by her, the son signed her name to the bond for title.

3. *Evidence as to pecuniary condition of children not provided for by will.*—It being shown on the part of the contestant that affectionate relations existed between the testatrix and certain grandchildren, for whom the will made no provision, the proponents may prove that these children had considerable property of their own.

4. *Burden of proof in case of confidential relations; participation of proponent in preparation of will*—Where it is shown that the chief executor and proponent of the will was the general agent of the testatrix, his mother, in the transaction of her business, the fact that he carried her to town with him, on her own request, and procured an attorney named by her to write her will, does not show such active participation on his part in the procurement of the will as, coupled with the existence of the confidential relations between them, will cast on him the *onus* of disproving undue influence.

5. *Charge as to influence of fear or imaginary terrors in procuring will.* A charge asked, in these words, "The conduct of one in vigorous health, towards one feeble in body, even though not unsound in mind, may be such as to excite terror or dread, and to make him execute as his will an instrument which, if he had been free from such influence, he would not have executed: imaginary terrors may have been created sufficient to deprive him of his free agency,"—is properly refused.

6. *Charges as to testamentary incapacity, and burden of proof.*—Charges given at the instance of the proponents, instructing the jury, in effect, that testamentary incapacity must exist at the time of the execution of the will; that the burden of proof as to such incapacity is on the contestants, the presumption being in favor of sanity and capacity; and that this burden can only be discharged or shifted by proof of prior habitual or fixed insanity, or actual insanity or other incapacity at the date of the instrument,—are correct expositions of the law.

7. *Charge as to testamentary capacity.*—A charge instructing the jury that, "if the testatrix had mind and memory enough to recollect the property she was about to bequeath, and the persons to whom she wished to bequeath it, and the manner in which she wished it to be disposed of, and to know and understand the business she was engaged in, then, in contemplation of law, she had a sound and dis-

Vol. 95.

[Eastis v. Montgomery.]

posing mind, and her great age and bodily infirmities do not vitiate a will thus made,"—asserts a correct legal proposition.

8. *Charge as to undue influence; explanatory charge.*—A charge which instructs the jury that they must find in favor of the contestants, "unless the evidence shows that the will was obtained by moral co-ercion, or by importunity which could not be resisted by the tes-tatrix," asserts a correct legal proposition; and if the contestant fears it may mislead the jury, because the will was contested on other grounds, he should ask an explanatory charge.

APPEAL from the Probate Court of Jefferson.

Tried before the Hon. A. H. BENNERS, as special judge.

In the matter of the last will and testament of Mrs. Martha Montgomery, deceased, which was propounded for probate by her three sons, Jonathan, Felix and David Montgomery, who were therein named as executors, and was contested by Mrs. A. C. Eastis, a grand-daughter of the testatrix, on these grounds : (1) that the testatrix, at the date of the will, was of unsound mind; (2) that her signature to the instru-ment was procured by fraud and undue influence; and (3) "that it was not made and executed according to law." The will was dated the 6th September, 1884, was written by Hon. M. T. Porter, then a practicing attorney, and was at-tested by him and C. L. McMillion; and each of them testi-fied, on behalf of the proponents, to its due execution and attestation, and stated the circumstances under which they were called in for that purpose by Jonathan Montgomery. The proponents then offered the will in evidence, and the court admitted it, against the objection and exception of the contestant; the ground of objection being, "that said will was not shown to have been properly executed." By the terms of the will, the testatrix gave all of her property to her eight living children, bequeathing only $5.00 each to the children of two deceased daughters, Mrs. Ellard and Mrs. Hawkins. W. W. Ellard, a witness for the contestant, having testified on cross-examination, that Hawkins, at the time of his death in 1873, "had property near Elyton of very considerable value," the contestant moved to exclude this evidence from the jury, and excepted to the overruling of the motion. He was also asked, on cross-examination, "How much property did your children have at the time of the execution of the will? and the court allowed the question, against the objection and exception of the contest-ant. The witness answered, "that his children owned valuable lands in Jefferson county, and that he owned 220 acres of land, but it was not very valuable."

Said Ellard testified, also, that Jonathan Montgomery attended to all of his mother's business, from 1866 until her

death in 1889—"that he was in fact the general manager of all her affairs;" also, that he had heard said Jonathan, in 1878-9, "trying to persuade his mother to make him a deed to about 70 acres of her land, which she refused to do at that time, and he abused and cursed her becaused she would not make the deed." J. W. Weatherly, a witness for the proponents, who had married a daughter of the testatrix, having testified on cross-examination, "My wife received 20 acres of land," was asked this question, "How much of her lands did testatrix divide among her eight children each, the beneficiaries in the will, after the execution of the will which embraced the lands so divided, if any?" The court sustained an objection to this question on the part of the proponents, and the contestant excepted. The bill of exceptions does not show the connection in which this evidence was offered, but only states these facts. Other witnesses testified, in behalf of the contestant, to disrespectful conduct and abusive language used by Jonathan Montgomery towards his mother. One of these witnesses testified: "I heard Jonathan say one day that he was going to see to it that his mother did not give the Ellard children any of her property, and that they should have none of it." The court excluded this evidence, on objection by the proponents, and the contestant excepted. Another witness for the contestant was asked this question: "Did you not hear Jonathan say that he was going to see to it that the Ellard children should have none of his mother's property?" The court sustained an objection to this question, and the contestant excepted.

Mrs. Anderson, a daughter of the testatrix, at whose house the will was executed, was asked this question: "Were you not present, and did you not see Jonathan Montgomery sign your mother's name to the bond for title to W. J. Cameron for the 100 acres of land?" The court sustained an objection to this question, and contestant excepted.

Jonathan Montgomery, one of the proponents, was examined as a witness for them, and denied that he had ever used abusive language to his mother, or treated her in any way with disrespect; and on cross-examination he stated: "Mother deeded to each of us, beneficiaries in the will, 20 acres of her land, and then had 65 acres left. I signed all the deeds for her. I sold off for her, in 1887, 100 acres of land to W. J. Cameron, for $10,000, of which he paid me in cash $3,333," and the balance afterwards as stipulated; and that this money was lent by her to her several children. The

witness was asked this question: "Did you not have a conversation with your sister, Mrs. Jane Hawkins, at her house in this county, in the presence of her daughter Jane, in which you said that your mother had executed a will that you did not like, in which the Ellard children were provided for, and that you had induced her to destroy that will." The court sustained an objection to this question, and the contestant excepted.

The contestant requested the following charges in writing, and duly excepted to their refusal:

(1.) "While the existence of confidential relations between the testator and the beneficiaries is not, in itself, enough to shift the burden of proof upon the proponents to show that there was not an undue influence existing upon the mind of the testatrix at the time of the making of the will, yet the existence of confidential relations between the testator and the principal or large beneficiary under the will, coupled with activity on the part of the latter in and about the preparation and execution of the will, such as the initiation of proceedings for the preparation, employing the draughtsman, selecting the witnesses, excluding persons from the presence of the testator at or about the time of the execution, and the like, will raise up a presumption of undue influence, and cast upon him the burden of showing that it was not induced by *coercion* or fraud on his part, directly or indirectly."

(2.) "If the jury believe from the evidence that Jonathan Montgomery managed and controlled the affairs of the testatrix for many years before the making of the will, and up to that time, living in the family with her and her insane daughter; that he actively participated in and about the execution of the will, such as procuring the draughtsman, the witnesses, &c., then this is sufficient to cast upon the proponents the burden of proving that the will was not the product of undue influence."

(3.) "The jury is charged that, in procuring a will to be made by which the testator disposes of his property in a manner different from what he would have done, had no improper influence been exercised over him, is sufficient reason for setting aside the will."

(4.) "The conduct of one in vigorous health towards one feeble in body, even though not unsound in mind, may be such as to excite terror or dread, and to make him execute as his will an instrument which, if he had been free from such influence, he would not have executed. Imaginary terrors may have been created sufficient to deprive him of his free agency."

[Eastis v. Montgomery.]

(5.) "If the jury believe from the evidence that Mrs. Montgomery, from the infirmity of age, or other cause, was reduced to that condition in which she was under *the* dominion and' control of Jonathan Montgomery; and that from threats, over-persuasion, putting in fear or dread, or any other improper conduct on his part, she was induced or influenced to execute this supposed will, contrary to what she otherwise would have done, then the paper is not a will, and their verdict must be for the contestants."

The court gave the following charges at the instance of the proponents, to each of which contestant excepted:

(1.) "The court charges the jury that an influence, to be an undue influence such as will be sufficient to vitiate a will, must be such as in some degree to destroy the free agency of the party making the will, and such as to constrain her to do what is against her will."

(2.) "If the jury believe from the evidence that the will was not obtained by the exercise of an influence amounting to coercion, by a motive tantamount to force or fear, such was not an undue influence."

(5.) "The burden of proof as to insanity, or incapacity to make a will, is on the contestant in the first instance, and that burden remains on the contestant until she shows habitual and fixed insanity, or otherwise shows a testamentary incapacity at the time the will was executed."

(6.) "There is no evidence in this cause of any importunity by Jonathan Montgomery of his mother to induce her to make the will in controversy."

(7.) "There is no evidence in this case of any threats made by Jonathan Montgomery towards his mother to induce or coerce her to make the will in controversy."

(8.) "That unless the evidence shows that the will was obtained by moral coercion, or by importunity which could not be resisted by the testatrix, the jury must find the issue in favor of the proponent."

(9.) "If the jury believe from the evidence that Martha Montgomery, at the time she made the will, was of sound mind, she could make a will; and for her mind to be sound, it is not necessary that her memory be perfect, and her mind be unimpaired; but if she had mind and memory enough to recollect the property she was about to bequeath, and the persons to whom she wished to bequeath it, and the manner in which she wished it to be disposed of, and to know and understand the business she was engaged in, then, in contemplation of law she had a sound, disposing mind; and her great age and bodily infirmity, if she was infirm, and her

[Eastis v. Montgomery.]

impaired mind, if her mind was impaired, do not vitiate a will thus made."

(10.) "The burden of proof to show undue influence is on the contestants in this case."

(11.) "The court charges the jury that a testatrix may, after the making of a will, sell or convey part of the property included in the will, without affecting the dipositions in the will so far as the remainder of the property mentioned in the will is concerned."

(12.) "Sanity is the normal condition of the human mind, and the testatrix in this case is presumed by the law to have been sane when she made the will, unless the contestant has shown to the jury's satisfaction that she was under the disability of habitual and fixed insanity prior to the execution of the will, or that she was not capable of making a will at the time the will was made."

(13.) "The influence which the law calls undue influence, and which must be shown to vitiate a will upon the ground of undue influence, must be an influence exerted at the time of the execution of the will, or must have such a relation to its execution as that the jury believes from it that the will was executed under such influence."

(14.) "Testamentary incapacity for making a will must be an incapacity existing at the time of the execution of the will."

(15.) "The burden of proof as to testamentary incapacity is on the contestant, and is not shifted except by proof of habitual and fixed insanity on the part of the testatrix prior to the making of the will."

The several rulings on evidence, the charges given, and the refusal of the charges asked, are assigned as error.

McGuire & Collier, for appellant.

Hewitt, Walker & Porter, and E. K. Campbell, *contra*.

McCLELLAN, J.—Many of the questions presented by this record were before this court on a former appeal, and then determined against the appellants. It was then held that the error of excluding, when first proposed, evidence as to the conveyances by the testatrix, after the making of the will, of seventy acres of land to Jonathan Montgomery, and twenty acres each to said Montgomery and the other principal beneficiaries, was cured by its subsequent admission, the facts in this regard being clearly proved, and indeed not controverted ; that the declarations made by

Jonathan Montgomery, then, and now again, offered in evidence, were not competent either to support or invalidate the will; and that the proposed testimony as to the transaction between Jonathan Montgomery, representing the testatrix, and W. J. Cameron, involving a sale and bond for title of and to one hundred acres of land, was properly excluded. It was also then ruled, that the giving of a charge requested by the proponents, to the effect that there was no evidence in the case of threats made by Jonathan Montgomery towards his mother, to induce or cause her to make the will in controversy, involved no reversible error.—*Eastis v. Montgomery*, 93 Ala. 293. And these several rulings we re-affirm.

This contest is prosecuted by, or in the interest of grandchildren of the testatrix—the issue of two daughters who had died before the will was executed—for whom the instrument makes no substantial provision. One of the two main grounds of contestation is the alleged undue influence exerted by the children of the testatrix, or some of them, who are equal beneficiaries under it. Evidence was adduced going to show affectionate relations between the testatrix and these grandchildren. This was, of course, intended to afford an inference that had the testatrix taken counsel of her affections, and been allowed to make such dispositions of her property as they naturally dictated, the grandchildren would not have been cut off with a penny; and therefore, the argument proceeds, undue influence must have been exerted upon her to induce this unnatural result. It is manifest that the strength of this inference depends greatly upon the circumstances and necessities of the grandchildren. If they, for instance, were already provided for—if their conditions in life were not such as to appeal to the bounty of the testatrix—it was much more reasonable that she should have failed of her own free will to make additional provision for them in her will, than had they been in necessitous circumstances. And for the purpose of showing that this exclusion from any substantial benefits under the will, notwithstanding the affection entertained for them by the testatrix, was not unnatural, and did not afford a basis for any inference of undue influence, it was entirely proper for the proponents to adduce evidence to the effect that the contestants had property of their own.—Schouler on Wills, § 242; *Beaubien v. Cicotte*, 12 Mich. 459; *Crocker v. Chase*, (Vt.) 1 East. Rep. 755; *Stubbs v. Houston*, 33 Ala. 555; *Fountain v. Brown*, 38 Ala. 72.

An objection was made to the introduction of the will in

evidence, on the ground that it was not shown to have been properly executed. We are not advised by counsel in what respect the preliminary evidence fell short of proving the requisite formality in the execution of the instrument, nor have we been able to find that anything essential in that regard was omitted to be done. The objection was without merit.

Charge No. 1 requested by the contestants was well refused, because, to say the least, it is abstract in a sense, and would have tended to confuse and mislead the jury. Some of its postulates find no lodgment in any tendency of the evidence. There is no evidence in this record of any activity on the part of Jonathan Montgomery in and about the preparation and execution of the will, except such as was the result of the wishes and requests of the testatrix, which, so far as the evidence discloses, were entertained and expressed by her of her own free will, and not themselves induced by any undue influence. Such activity, not of proponent's own motion, or prompted by personal motives, but in behalf of the testatrix, and in furtherance of her purposes, will not combine with confidential relations to shift the burden of proof as to undue influence upon the proponent. And because of this, the charge was misleading; the activity shown by the evidence was not of a character to support the conclusion sought to be drawn from it. Moreover, there is no evidence whatever that the proponent excluded persons from the presence of the testatrix about the time of the execution of the will,—a fact which is made a sub-postulate for the proposition declared in the charge; and to this extent, at least, the instruction was palpably abstract.

Charge No. 2 refused to contestants is open to the same objections as those stated to charge 1. There is no evidence of such procurement of the draughtsman and witnesses, as, with proof of confidential relations, cast the *onus* of negativing undue influence on the proponent.

Charge 3 refused to contestants was well calculated to mislead the jury, in that it assumes that the will referred to had been procured to be made by the exercise of improper influence, and might thereby have led the jury to the conclusion that, in the opinion of the court, the will in this case had been so procured. Had this charge directed the jury to the effect that, if they *believed* from all the evidence that Martha Montgomery had been induced by improper or undue influence to execute a will different from the will she would have executed but for such influence, they would be authorized to set it aside, it would have been unobjection-

[Eastis v. Montgomery.]

able; but, as it is written, it is clearly open to a construction which would have made it an invasion of the province of the jury, the effect being to deny their right to say, in the first instance, whether the will propounded *had been* so procured to be made.

Charge 4 refused to contestants is palpably an argument throughout. Of course, the conduct of one toward another may be such as to excite that degree of dread and terror in the latter as will induce him to execute an instrument purporting to be a will which does not accord with his real wishes and purposes, and is therefore not a will at all; and this regardless of the respective physical and mental conditions of the parties. But it is no part of the court's duty, charged only with the declaring the law to the jury, to enter upon this kind of disquisition as to the probable or possible effect of the conduct of one man toward another. This is a matter of fact and inference for the jury, and one upon which they are deemed as competent to pass as the presiding judge, and one, too, upon which the judge is not, and they are, authorized and required to pass. This charge, moreover, as well as the 5th instruction requested for contestants, is abstract. There is no evidence of the excitation of terror and dread in the mind of the testatrix, nor of any threats, or over-persuasion, or putting in fear on the part of Jonathan Montgomery, in connection with the execution of the will by his mother.

Charges 5, 12, 14, and 15 given at the instance of the proponents, to the effect, or involving the ideas, that testamentary incapacity is an incapacity existing cotemporaneously with the execution of the alleged will; that the burden of proof as to such incapacity is upon the contestants, the original presumption of sanity and capacity being always indulged; and that this burden can only be discharged or shifted by showing prior habitual or fixed insanity, or actual insanity, or other incapacity at the date of the instrument, are correct expositions of the law; as also is charge 9, which defines testamentary capacity.—*Leeper v. Taylor*, 47 Ala. 221; *Cotten v. Ulner*, 45 Ala. 378; *Daniel v. Hill*, 52 Ala. 430; *O'Donnell v. Rodiger*, 76 Ala. 322; *Kramer v. Weinert*, 81 Ala. 414.

The pleadings presented three issues: (1) whether the instrument propounded as a will had been efficiently executed; (2) whether Mrs. Montgomery had testamentary capacity; and (3) whether the will propounded was procured to be made by the exercise of undue influence. Charge 8, "That unless the evidence shows that the will was obtained

by moral coercion, or by importunity which could not be resisted by the testatrix, the jury must find the issue in favor of the proponents," had reference to the *issue* of undue influence *vel non*. If contestants apprehended that the jury would be misled by this charge to the conclusion that all three of the issues—the whole case—should be determined against the contestants, if they found that no undue influence had been resorted to, they should have asked an explanatory and limiting charge. This tendency or capacity to mislead in charges, while it will justify their refusal, is no ground for reversal when they are given, if they in fact assert the law correctly. And the charge, abstractly considered, is sound.—*Bancroft v. Otis*, 91 Ala. 279 ; *Eastis v. Montgomery*, 93 Ala. 293.

Every assignment of error which has not been specifically discussed is covered, either by what we have said, or by the opinion of the court on the former appeal ; and as the facts of the case as then and now presented, when brought to the touch of the principles of law obtaining in the premises, are substantially the same, we deem it unnecessary to say more here than that we find no error in the record.

Affirmed.