[Smith v. Smith, et al.]


# Smith *v.* Smith, *et al.*

## Will Contest.

### (Decided Dec. 21, 1911.   56 South. 949.)

1. *Wills; Contest; Fraud; Undue Influence.*—Under the evidence in this case, the issues as to whether the will was procured by fraud or undue influence, were for the jury.

2. *Same; Confidential Relations; Burden of Proof.*—Where a beneficiary who initiated, or directiy or indirectly participated in, the preparation or execution of a will occupied at the time relations of confidence or trust with the testator, the proponent of the will had the burden of showing that the will was not induced by coercion or fraud, directly or indirectly exercised by such person, and, where the will was procured through the undue influence of such person, such influence operated against all the beneficiaries.

3. *Same; Instructions.*—A charge asserting, in a will contest, that it is not the means employed so much as the effect produced, which must be considered in determining whether undue influence contributed to the making of the will, for though the influences exerted over the testator were such as under ordinary circumstances would be regarded as innocent, yet, if in any particular case it resulted in a will contrary to the testator's desire, the influence was undue, and that in considering the question, it was essential to ascertain the power of coercion, and the liability of its influence, etc., was not prejudicial to the proponent.

4. *Same.*—An instruction that if the influences which were brought to bear upon the testator were undue, and the making of the will was the result thereof, whereby a part of testator's family were provided for, to the exclusion of others, and the will to that extent was unnatural, it would follow that the will was illegal and the verdict must be for the contestants, in effect affirmed, that a discrimination between children was illegal, and such discrimination is evidential only, under issues of mental capacity vel non to execute the will, or undue influence vel non in its execution.

5. *Same; Undue Influence.*—Although a person of impaired mental strength is a more favorable subject of undue influence than one whose strength is not so impaired, yet the undue influence that will avoid a testamentary act of a person of impaired· mental capacity, must destroy the free agency, and compel such person to do what is against his will.

6. *Same; Burden of Proof.*—The mere fact of concealment by beneficiaries standing in confidential relations to the testator, of a will already executed, does not cast on the proponent the burden of negativing fraud and undue influence in the. preparation .of the will, where such concealment was by a beneficiary not connected with its procurement or execution, and who had not conspired with anyone exercising such undue influence; however, the concealment

by a beneficiary standing in confidential relations to the testator must bear some relation to the inducement of testator to make the will, or to some activity with respect to its preparation or execution to cast such burden of proof on the proponent.

7. *Same; Evidence.*—Where the children of the testator excluded from the will contest its probate on the ground of fraud and undue influence, it is not admissible to show that the contestants had contributed through their labor, to the purchase of the land owned by testatrix at the time of her death, and at the date of the execution of the will.

8. *Same.*—It was not admissible under. the issues made to show that the testatrix and her husband had, sometime before their separation and the execution of the will, conveyed land to the beneficiaries under the will, who were charged with exercising undue influence, in consideration of their promise to quit bringing on rows between the husband and wife.

APPEAL from Houston Probate Court.

Heard before Hon. GEORGE LESLIE.

Proceedings by J. W. Smith for the probate of the will of Mary Smith, deceased, in which J. M. Smith and another appear as contestants. From a judgment refusing the probate, the proponent appeals. Reversed and remanded.

The following charges were given at the request of the contestants: (1) "If the testator is given a false impression concerning persons who are the natural objects of her bounty, so that when she comes to make her will she acts upon unfounded belief, and gives or withholds her bounty in a manner entirely different from what her action would have been, had it not been based on false beliefs and opinions deliberately instilled into her mind for the purpose of influencing her will, and if in such case the testator is not in position, from any cause, such as sickness, age, debility, concealment of the true facts, or any other reason, to judge for herself and to deliberate or resist the influences, and the will is the result of them, it is invalid for undue influence." (2) "If the jury is reasonably satisfied from the evidence in this case that influences were brought to bear on the deceased, and that these influences were un-

due in their nature, and the making of the will was the result of such influences, whereby a part of the family were provided for to the exclusion of the contestants, and the will to that extent is unnatural, it would follow as a matter of law that the will would be illegal, and you would be required under the law to return a verdict in favor of the contestants." (3) "The existence of confidential relations between the testator and beneficiaries under the will, or either of the beneficiaries, coupled with activity on the part of the latter in and about the execution of the will, such as initiation of proceedings for the preparation of the will or participation in such selection, employing or aiding in the employment of the draftsmen, selecting the witnesses, concealing the will after it was made, or keeping it concealed in the possession of the beneficiaries, or either of them, and the like, will raise the presumption of undue influence, and cast on them the burden of showing that it was not induced by coercion or fraud on their part; directly or indirectly." (4) "It is not necessary that there should be confidential relations between all beneficiaries and the testator. If there is such relation with one of a family, and the will is found to have been procured through his undue influence, it operates against all the family." (5) "It is not the means employed so much as the effect produced which must be considered in determining whether undue influence has contributed to the making of the will, for though the influence exerted over the testator was such as if under ordinary circumstances, or exercise over persons of ordinary power of resistance, would be regarded as innocent, yet if in the particular case it resulted in the disposition of property contrary to the testator's desire, the influence was undue." (6) "Whether the free agency of the testator is destroyed or mastered by physical force or mental co-

[Smith v. Smith, et al.]

ercion, by threats which occasioned fear, or by importunity which the testator is too weak to resist, or which exerts compliance in the hope of peace, is immaterial. In considering the question, therefore, it is essential to ascertain as far as practicable the power of coercion upon the one hand and the liability to its influence on the other. And whenever through weakness, ignorance, dependence, or implied reliance of one on the good faith of the other, the latter obtains an ascendancy which prevents the former from exercising an unbiased judgment, undue influence exists."

ESPY & FARMER, for appellant. The fact that the children excluded from the will had, by their labor, contributed to the payment of the purchase price, was inadmissible.—*Schiefferlin v. Schiefferlin*, 127 Ala. 34, and cases cited. It was also inadmissible to show that certain lands were deeded to the beneficiaries under the will before the death of testatrix on consideration that the beneficiaries named in the will would stop bringing on rows between husband and wife.—Authorities supra; *Potts v. Coleman*, 86 Ala. 94. The evidence as to the control exercised by the beneficiaries that they controlled their mother, and that they had everything fixed, was inadmissible as hearsay.—*Woodruff v. Hundley*, 127 Ala. 640; *Leslie v. Sims*, 39 Ala. 161. The testatrix being the mother, was presumed to be the dominant party, and the burden of proof was not shifted because of confidential relations, until it affirmatively appears that such relations existed.—*McLeod v. McLeod*, 145 Ala. 298. Confidential relations do not necessarily raise the presumption of undue influence.—*Bancroft v. Otis*, 91 Ala. 279; *McQueen v. Wilson*, 131 Ala. 601. Charge 6 given for the contestants was error.—*Shiver v. Hardy*, 39

[Smith v. Smith, et al.]

South. 609; *Herring v. Skaggs*, 73 Ala. 446; *Goldsmith v. The State*, 80 Ala. 55.

B. F. REID, for appellee. The law presumes against disinheritance of an heir as in this case.—*Wolffe v. Loeb*, 98 Ala. 426. The court was not in error in giving the charges.—*Bancroft v. Otis*, 91 Ala. 291; *McQueen v. Wilson*, 30 South. 94; *Coghill v. Kennedy*, 119 Ala. 641. There is no merit in any of the objections raised on the admission of testimony.—Authorities supra; *Henry v. Hall*, 106 Ala. 101; *Snider v. Burks*, 84 Ala. 56.

McCLELLAN, J.—The paper propounded for probate as the last will and testament of Mary Smith, deceased, purports to devise and bequeath all her estate to six of her children, excluding Nancy Outlaw and James Marion Smith, the contestants, from sharing therein.

The trial was had on grounds of contest alleging fraud and undue influence in the execution of the instrument.

It appears without conflict in the evidence that Mary Smith and Frank Smith, her husband, were divorced before the date of execution of the instrument; that Frank was a man of intemperate habits; that prior to their divorce they had several times temporarily separated; and that Mary Smith "was a frail, sickly woman, and could not attend to her business."

From phases of the testimony it appears that Wes and Wyatt Smith, two of the beneficiaries, had promoted the disagreements and controversies between the parents, culminating as indicated, they, with the other beneficiaries, favoring and espousing the mother's side, and the contestants, the father's side, in the disagree-

14—174

ments; that the mother took account of the respective attitudes of the children; that she expressed the purpose to give her property to those of her children who were loyal to her in the controversies, and to exclude from sharing in her estate those of her children who were not loyal to her therein, and, on the other hand, that she had expressed the purpose and desire that all her children share equally in her property. From other phases of the testimony, it appears that Wes and Wyatt Smith were her advisors in all of her affairs; that she would take no action without their advice and approval; and that after her last separation from Frank Smith she went to live with Wes or Wyatt, or both. It also appears from other phases of the testimony that Wes and Wyatt had made statements indicative of their purpose, or in recital of the result of their effected purpose, to bring about the exclusion of contestants from sharing in the mother's estate. There was also testimony tending to show that Wes and Wyat desired the separation of their parents and purposed its perpetuation—that they discountenanced a reconciliation. There was also evidence by Wes Smith to the effect that he on the day of the paper's execution took his mother home in his conveyance; that en route she showed him the paper; that he then became acquainted with its provisions; that he knew where she kept it; that he got it when she died; and that he did not relate the fact to contestants. Wes Smith also testified that "he never asked her to make a will cutting out the contestants or either of them, and did not know that she had done so until she had been to Dothan and had done it."

From this summary recital of some of the tendencies of the evidence it is clear that the determination of the issues raised by the grounds of contest before stated was for the jury. And if the jury credited that phase of

the evidence tending to show that Wes and Wyatt Smith initiated, or directly or indirectly participated in, the preparation or execution of the instrument in which they are named as beneficiaries, occupying at the time relations of confidence with the decedent, then the burden of proof was upon the proponent to show that the instrument was not induced by coercion or fraud, directly or indirectly exercised, on the part of Wes and Wyatt Smith, or either of them.—*Bancroft v. Otis,* 91 Ala. 29, 291, 8 South. 286, 24 Am. St. Rep. 904; *Lyons v. Campbell,* 88 Ala. 462, 7 South. 250; *Coghill v. Kennedy,* 119 Ala. 641, 24 South. 459; *Daniel v. Hill,* 52 Ala. 430; *Mullen v. Johnson,* 157 Ala. 262, 47 South. 584. Confidential relations alone will not suffice to shift and impose the burden of proof in such cases.— Author. supra.

Special written charges numbered (in the transcript) 4, 5, and 6 were copies of charges considered in *Coghill v. Kennedy, supra.* There was no prejudicial error in giving them.

Special written charge numbered (in the transcript) 1 is at least of doubtful soundness. It might well have been refused. It is by no means clear from its terms that each of the alternative hypotheses in its last lines is the legal equivalent of undue influence or fraud as understood in our law.—*Eastis v. Montgomery,* 93 Ala. 300, 9 South. 311; *Mullen v. Johnson,* 157 Ala. 262, 47 South. 584. Impaired mental strength is, of course, a more favorable subject of undue influence than a mind not so impaired. Notwithstanding the susceptibility of a weakened mental state, in so far as independence of thought and action is concerned, to receive and yield to undue influence, still the undue influence that will avoid a testamentary act must amount to coercion or fraud—must destroy the free agency of the party upon

whom it is exercised and constrain him to do what is against his will.—*Eastis v. Montgomry, supra; Mullen v. Johnson, supra.*

Charge 3 was erroneously given upon request of contestants. According to its terms, mere concealment by a beneficiary confidentially relationed of a will already executed would cast upon the proponent the burden of proof to negative fraud and undue influence in its procurement or execution, notwithstanding such concealment was by a beneficiary in no wise connected with the preparation or execution of the instrument, and who was not shown to have conspired with any one exerting such influence or practicing a fraud upon the testator. The concealment by the beneficiary confidentially relationed to which reference is had in *Bancroft v. Otis,* 91 Ala. 279, 291, 8 South. 286, 24 Am. St. Rep. 904, must bear some relation to the inducement of the testator to make the will, or to some activity with respect to its preparation or execution. The charge probably possesses other vices.

The court is divided in opinion upon the question whether charge 2 was misleading or affirmatively erroneous. None approve the instruction. One of its vices appears in the particular that it may be taken as affirming that a discriminating (between children) testamentary instrument would be as a matter of law illegal; whereas such discrimination is evidential only under issues of mental capacity vel non to execute the paper, or of undue influence vel non in its execution.— *Coleman v. Robertson,* 17 Ala. 87, 88; *Eastis v. Montgomery,* 93 Ala. 300, 9 South. 311.

It was shown, at least inferentially, on the trial, notwithstanding proponent's objection, that contestants at some previous time contributed through their labor to the purchase of the land owned by the mother at the

time of her death and at the date of the execution of the instrument now propounded for probate. This was error.—*Winston v. Elliott,* 169 Ala. 416, 53 South. 750. That character of testimony had no legitimate bearing upon the issues of fraud and undue influence in the execution of the instrument.

Nor should the contestants have been permitted to adduce testimony tending to show that decedant and her husband conveyed two or three years before their separation tracts of land to Wes and Wyatt Smith "because they promised to quit bringing rows between witness (Frank Smith) and Mary Smith." Such testimony was aside the issues formed upon the trial. Its inevitable effect was to draw into the inquiry extraneous and wholly remote matter.

For the errors indicated, the judgment is reversed and the cause is remanded.

Reversed and remanded. All the Justices concur, save DOWDELL, C. J., not sitting.